# EXHIBIT A

**PHILLIPS & PAOLICELLI, LLP**
Quakerbridge Executive Center
101 Grovers Mill Road
Lawrenceville, NJ 08648
Phone: (609) 789-5600
747 Third Avenue, 6th Floor
New York, NY 10017
Phone: (212) 388-5100
Fax: (212) 388-5200
*Attorneys for Plaintiffs By:*
Steven J. Phillips, Esq. (Bar No. 007601984)
Daniel Woodard, Esq. (Bar No. 020132006)
Victoria E. Phillips, Esq. (Bar No. 020732004)
Russell J. Curley, Esq. (Bar No. 045031997)

**COONEY & CONWAY, PC**
191 N. Wacker Drive, Suite 1500
Chicago, IL 60606
Phone: (312) 236-6166
Fax: (312) 236-3029
*Attorneys for Plaintiffs By:*
Kevin Conway, Esq. (*pro hac vice to be submitted*)
Leroy K. Martin, III, Esq. (*pro hac vice to be submitted*)
Britney R. Pennycook, Esq. (*pro hac vice to be submitted*)

**WATERS KRAUS PAUL & SIEGEL, LLP**
3141 Hood Street, Suite 700
Dallas, Texas 75219
Phone: (214) 357-6244
Fax: (214) 357-7252
*Attorneys for Plaintiffs By:*
Peter Kraus, Esq. (*pro hac vice to be submitted*)
Caitlyn Silhan (*pro hac vice to be submitted*)

| | |
|---|---|
| KAREN ATWOOD, HARRY HELLER, WYATT ELLIS, SHAUN ELLIS, SUZANNE DAVIS, WILLIAM PIDGEON, MARY PIDGEON, JENNIFER SANDOZ, CHRISTOPHER PIDGEON, JEANETTE PIDGEON, RENEE MCCORMICK, ROBERT MCCORMICK, JOHN OTT III, CAROL OTT, SYLVIA BARRANTES, BRAD STAUDLE, WILLIAM ROBINSON INDIVIDUALLY & AS THE PERSONAL REPRESENTATIVE OF MARGARET ROBINSON, TYLER RAMSIN, AIK JUK TAN, CAROL RAMSIN, THOMAS RAMSIN, JESSICA RAMSIN, KATHLEEN BROWN, and EUGENE KEARNS, | SUPERIOR COURT OF<br><br>NEW JERSEY LAW DIVISION –<br><br>HUNTERDON COUNTY<br><br><br><br>DOCKET NO.:<br><br>*CIVIL ACTION* |

1

|  |  |
|---|---|
| Plaintiffs, | |
| v. | **COMPLAINT, JURY DEMAND,** |
| | **AND DESIGNATION OF** |
| E.I. DU PONT DE NEMOURS & COMPANY, DUPONT SPECIALTY PRODUCTS, USA, LLC, CORTEVA, INC., THE CHEMOURS COMPANY, THE CHEMOURS COMPANY FC, LLC, THE CITY OF LAMBERTVILLE, TOWNSHIP OF WEST AMWELL, TAURUS CORPORATION, TAURUS CORPORATION LIQUIDATION TRUST, ACADEMY HILL, INC., ROBLYN DEVELOPMENT CORPORATION, JOHN CHAYKO, P.E., CITY OF LAMBERTVILLE ENGINEER, SUBURBAN CONSULTING ENGINEERS, MERRICK WILSON, RIVER VALLEY HEIGHTS CORPORATION, JOHN DOE ENTITIES #1-10. | **TRIAL COUNSEL** |
| Defendants. | |

Plaintiffs Karen Atwood and others set forth in the caption and described below, by way of Complaint against Defendants E.I. DuPont de Nemours & Co., DuPont Specialty Products, USA, LLC, Corteva Inc., The Chemours Co., The Chemours Co. FC, LLC, City of Lambertville, Township of West Amwell, Taurus Corporation, Taurus Corporation Liquidation Trust, Academy Hill, Inc., Roblyn Development Corp., John Chayko, P.E., City of Lambertville Engineer, Suburban Consulting Engineers, Inc., Merrick Wilson, River Valley Heights Corporation, and JOHN DOE Entities # 1 – 20 (collectively "Defendants") allege as follows:

## I.   PRELIMINARY STATEMENT

1.     This is a civil action brought by Plaintiffs against Defendants E.I. DuPont de Nemours & Co., DuPont Specialty Products, USA, LLC, Corteva Inc., The Chemours Co., The Chemours Co. FC, LLC, The City of Lambertville, Township of West Amwell, Taurus Corporation, Taurus Corp. Liquidation Trust c/o John D. Kreuter, Trustee and Joann P. Kreuter, Trustee, Academy Hill, Inc., Roblyn Development Corp., John Chayko, P.E., City of Lambertville Engineer, Suburban Consulting Engineers, Inc., Merrick Wilson, River Valley Heights Corp., and JOHN DOE Entities # 1 – 20 (collectively "Defendants").

2.     Plaintiffs seek to recover money damages on behalf of injured Plaintiffs or deceased Plaintiffs, as described below, for personal injuries they sustained that were proximately caused by Defendants' misconduct.

3.     Other Plaintiffs, described below seek to recover money damages they sustained because of injuries sustained by their children or spouses ("Derivative Plaintiffs").

4.     Additional Plaintiffs, described below, seek to recover money damages they sustained for the diminution of property values that were proximately caused by Defendants' misconduct.

5.     The injuries and damages sustained by Plaintiffs were proximately caused by their wrongful exposure to a class of chemicals known as per- and polyfluoroalkyl substances ("PFAS"). These exposures were the result Defendants' misconduct   in   wrongfully   manufacturing,   selling,   handling   and   otherwise

3

participating in conduct that resulted in the release of PFAS into the environment in and around Plaintiffs' residences which at all relevant times contaminated their wells and drinking water and the environment in and around their homes in the City of Lambertville.

6.      Consequently, Plaintiffs were wrongfully exposed to these PFAS and other toxic substances by ingestion, inhalation, and dermal contact (absorption) for prolonged periods of times in which the intensity, duration, timing, aggregation and chronicity of their exposure was highly toxic, proximately causing Plaintiffs' injuries and damages.

7.      Injuries sustained by the injured Plaintiffs are described below.

## II.      THE PARTIES

### A.      THE INJURED PLAINTIFFS

8.      Plaintiff Karen Atwood is a citizen of New Jersey who was born on March 8, 1958. She resides at 57 Belvidere Avenue, Lambertville, New Jersey, and has lived there continuously since 1994.

9.      Karen Atwood suffers from the following injuries:

   a.  Breast cancer (left and right recurrence);

   b.  Heart attack;

   c.  Multiple strokes;

   d.  Gallbladder removal;

   e.  Colon polyps; and

   f.  Was otherwise injured.

4

10.     Plaintiff Harry Heller is a citizen of New Jersey who was born on May 29, 1956. He resides at 27 Old York Road, Lambertville, New Jersey, and has lived there continuously since 1956.

11.     Harry Heller suffers from the following injuries:

    a. Type 2 diabetes mellitus;

    b. Chronic kidney disease (stage three renal failure);

    c. Irritable bowel syndrome;

    d. Fatty liver disease;

    e. Heart stent;

    f. Cardiac catheterization; and

    g. Was otherwise injured.

12.     Plaintiff Wyatt Ellis is a citizen of New Jersey who was born on January 22, 2008. He resides at 21 Belvidere Avenue, Lambertville, New Jersey. At relevant times he resided at the following addresses:

    a. 204 Brunswick Avenue, Lambertville, New Jersey.

13.     Wyatt Ellis suffers from the following injuries:

    a. Testicular cancer;

    b. Infertility; and

    c. Was otherwise injured.

14.     Plaintiff Suzanne Davis is a citizen of New Jersey who was born on October 2, 1947. She resides at 8 Grant Avenue, Lambertville, New Jersey, and has lived there continuously since 1999.

15. Suzanne Davis suffers from the following injuries:

   a. Atrial fibrillation;

   b. Stroke;

   c. High liver enzymes; and

   d. Was otherwise injured.

16. Plaintiff William Pidgeon is a citizen of New Jersey who was born on March 11, 1947. He resides at 114 Skillman Street, Lambertville, New Jersey, and has lived there continuously since 1973.

17. William Pidgeon suffers from the following injuries:

   a. Type 2 diabetes mellitus;

   b. Kidney disease;

   c. Parkinson's disease;

   d. Colon polyps; and

   e. Was otherwise injured.

18. Plaintiff Mary Pidgeon is a citizen of New Jersey who was born on May 16, 1949. She resides at 114 Skillman Street, Lambertville, New Jersey, and has lived there continuously since 1973.

19. Mary Pidgeon suffers from the following injuries:

   a. Type 2 diabetes mellitus;

   b. Stage 3 chronic kidney disease;

   c. Coronary artery disease;

   d. Thyroid disease;

    e.  Lipomas;

    f.  Bipolar depression;

    g.  High cholesterol; and

    h.  Was otherwise injured.

20.    Plaintiff Jennifer Sandoz is a citizen of New Jersey who was born on December 29, 1971. She resides at 1970 Veterans Highway, Levittown, Pennsylvania. At relevant times she resided at the following addresses: 114 Skillman Street, Lambertville, New Jersey.

21.    Jennifer Sandoz suffers from the following injuries:

    a.  Type 2 diabetes mellitus;

    b.  Peripheral neuropathy;

    c.  Irritable bowel syndrome;

    d.  Subfertility;

    e.  Polycystic ovarian syndrome; and

    f.  Was otherwise injured.

22.    Plaintiff Christopher Pidgeon is a citizen of New Jersey who was born on April 11, 1975. He resides at 6 John Ringo Road, Ringoes, New Jersey. At relevant times he resided at the following address: 114 Skillman Street, Lambertville, New Jersey.

23.    Christopher Pidgeon suffers from the following injuries:

    a.  Type 2 diabetes mellitus;

    b.  High cholesterol;

7

    c.  Hypertension;

    d.  Bipolar depression;

    e.  Attention deficit disorder;

    f.  Erectile dysfunction; and

    g.  Was otherwise injured

24.    Plaintiff Jeanette Pidgeon is a citizen of New Jersey who was born on May 31, 1976. She resides at 6 John Ringo Road, Ringoes, New Jersey. At relevant times she resided at the following address: 114 Skillman Street, Lambertville, New Jersey.

25.    Jeanette suffers from the following injuries:

    a.  Gestational diabetes;

    b.  Type 2 diabetes mellitus;

    c.  Hypothyroidism; and

    d.  Was otherwise injured.

26.    Plaintiff Renee McCormick is a citizen of New Jersey who was born on November 14, 1961. He resides at 226 Coryell Road, Lambertville, New Jersey, and has lived there continuously since 2010.

27.    Renee McCormick suffers from the following injuries:

    a.  Breast cancer;

    b.  Endometriosis;

    c.  Hysterectomy;

    d.  Melanoma; and

e. Was otherwise injured

28.     Plaintiff Robert McCormick, Jr. is a citizen of New Jersey who was born on November 16, 1961. He resides at 226 Coryell Road, Lambertville, New Jersey, and has lived there continuously since 2010.

29.     Robert McCormick suffers from the following injuries:

a. Thyroid disease;

b. High cholesterol; and

c. Was otherwise injured

30.     Plaintiff John Ott III is a citizen of New Jersey who was born on December 6, 1964. He resides at 17 Belvidere Avenue, Lambertville, New Jersey. At relevant times he resided at the following address: 21 Belvidere Avenue, Lambertville, New Jersey.

31.     John Ott III suffers from the following injuries:

a. Stroke;

b. Atrial fibrillation;

c. Hyperthyroidism; and

d. Was otherwise injured

32.     Plaintiff Carol Ott is a citizen of New Jersey who was born on December 13, 1962. She resides at 17 Belvidere Avenue, Lambertville, New Jersey. At relevant times she resided at the following address: 21 Belvidere Avenue, Lambertville, New Jersey.

33.     Carol Ott suffers from the following injuries:

    a.  Breast cancer; and

    b.  Was otherwise injured.

34.  Plaintiff William Robinson is a citizen of New Jersey who was born on March 4, 1934. He resides at 1 Belvidere Avenue, Lambertville, New Jersey, and has lived there continuously since 1959.

35.  William Robinson suffers from the following injuries:

    a.  Type 2 diabetes mellitus;

    b.  Congestive heart failure;

    c.  Prostate cancer; and

    d.  Was otherwise injured.

36.  Plaintiff Margaret Robinson, now deceased, was a citizen of the state of New Jersey who resided at 1 Belvidere Avenue, Lambertville, New Jersey, until her death in 2025.

37.  Margaret Robinson suffered from the following injuries:

    a.  Type 2 diabetes mellitus;

    b.  Kidney disease;

    c.  Breast cancer;

    d.  Skin cancer; and

    e.  Was otherwise injured.

38.  Plaintiff Sylvia Barrantes is a citizen of New Jersey who was born on September 4, 1987. She resides at 22 Belvidere Avenue, Lambertville, New Jersey, and has lived there continuously since 2023.f

39. Sylvia Barrantes suffers from the following injuries;

    a. Ulcerative colitis;

    b. High cholesterol;

    c. Hypertension; and

    d. Was otherwise injured.

40. Plaintiff Tyler Ramsin is a citizen of Pennsylvania who was born on November 14, 1992. She resides at 28 Pearl Drive, Doylestown, Pennsylvania. At relevant times she resided at the following address: 34 Belvidere Avenue, Lambertville, New Jersey.

41. Tyler Ramsin suffers from the following injuries:

    a. Thyroiditis;

    b. Grave's disease;

    c. Hashimoto's disease;

    d. Thyroidectomy;

    e. Anemia;

    f. Irritable bowel syndrome;

    g. Subfertility/infertility;

    h. Endometriosis;

    i. Polycystic ovarian syndrome;

    j. Gestational diabetes;

    k. Preeclampsia;

    l. Placental abruption;

  m. Ehlers-Danlos syndrome; and

  n. Was otherwise injured.

42. Plaintiff Aik Juk Tan is a citizen of Pennsylvania who was born on March 7, 1992. He resides at 28 Pearl Drive, Doylestown, Pennsylvania. At relevant times he resided at the following address: 34 Belvidere Avenue, Lambertville, New Jersey.

43. Aik Juk Tan suffers from the following injuries:

  a. Infertility;

  b. Misshapen sperm; and

  c. Was otherwise injured.

44. Plaintiff Carol Ramsin is a citizen of New Jersey who was born on January 10, 1967. She resides at 34 Belvidere Avenue, Lambertville, New Jersey, and has lived there continuously since 2011.

45. Carol Ramsin suffers from the following injuries:

  a. Irritable bowel syndrome;

  b. Diverticulitis;

  c. Stomach ulcer;

  d. Polycystic ovarian syndrome;

  e. Prediabetes;

  f. Migraines;

  g. High cholesterol;

  h. Hypertension; and

    i.  Was otherwise injured.

46.    Plaintiff Jessica Ramsin is a citizen of New Jersey who was born on May 8, 1995. She resides at 34 Belvidere Avenue, Lambertville, New Jersey, and has lived there since 2011.

47.    Jessica Ramsin suffers from the following injuries:

    a.  Irritable bowel syndrome;

    b.  Polycystic ovarian syndrome;

    c.  Prediabetes;

    d.  Migraines;

    e.  Bradycardia;

    f.  Scoliosis; and

    g.  Was otherwise injured

48.    Plaintiff Kathleen Brown is a citizen of New Jersey who was born on June 3, 1955. She resides at 19 Old York Road, Lambertville, New Jersey, and has lived there continuously since 1988.

49.    Kathleen Brown suffers from the following injuries:

    a.  Atrial fibrillation;

    b.  Blood clots in leg and lung;

    c.  Lymphedema;

    d.  Lipedema;

    e.  Pulmonary edema;

    f.  Irritable bowel syndrome;

    g. Hypertension; and

    h. Was otherwise injured

50. Plaintiff Eugene Kearns is a citizen of New Jersey who was born on February 8, 1984. He resides at 19 Old York Road, Lambertville, New Jersey, and has lived there since 1988.

51. Eugene Kearns suffers from the following injuries:

    a. Irritable bowel syndrome;

    b. ADD/ADHD;

    c. Central auditory processing delay;

    d. Varicocele deficiency;

    e. Infertility; and

    f. Was otherwise injured.

## B. THE DERIVATIVE PLAINTIFFS

52. Ruben Sandoz is a citizen of New Jersey and is the spouse of the injured Plaintiff Jennifer Sandoz. He suffered derivative damages as a consequence of the personal injuries suffered by his spouse.

53. Brad Staudle is a citizen of New Jersey and is the spouse of the injured Plaintiff Sylvia Barrantes. He suffered derivative damages as a consequence of the personal injuries suffered by his spouse.

54. Thomas Ramsin is a citizen of New Jersey and is the spouse of the injured Plaintiff Carol Ramsin. He suffered derivative damages as a consequence of the personal injuries suffered by his spouse.

## C.     THE PROPERTY DAMAGE PLAINTIFFS

55.     Karen Atwood is the owner of property located at 57 Belvidere Avenue, Lambertville, New Jersey. She has suffered damages as a consequence of the diminished value of that property proximately caused by Defendants' misconduct.

56.     Harry Heller is the owner of property located at 27 Old York Road, West Amwell Township, New Jersey. He has suffered damages as a consequence of the diminished value of that property proximately caused by Defendants' misconduct.

57.     Shaun Ellis is the owner of property located at 21 Belvidere Avenue, Lambertville, New Jersey. He has suffered damages as a consequence of the diminished value of that property proximately caused by Defendants' misconduct.

58.     Suzanne Davies is the owner of property located at 8 Grant Avenue, Lambertville, New Jersey. She has suffered damages as a consequence of the diminished value of that property proximately caused by Defendants' misconduct.

59.     William and Mary Pidgeon are the co-owners of property located at 114 Skillman Street, Lambertville, New Jersey. They have suffered damages as a consequence of the diminished value of that property proximately caused by Defendants' misconduct.

60.     Robert and Renee McCormick are the co-owners of property located at 226 Coryell Road, Lambertville, New Jersey. They have suffered damages as a consequence of the diminished value of that property proximately caused by Defendants' misconduct.

61.     Carol and John Ott III are the co-owners of property located at 17

Belvidere Avenue, Lambertville, New Jersey. They have suffered damages as a consequence of the diminished value of that property proximately caused by Defendants' misconduct.

62. Sylvia Barrantes and Brad Staudle are the owners of property located at 22 Belvidere Avenue, Lambertville, New Jersey. They have suffered damages as a consequence of the diminished value of that property proximately caused by Defendants' misconduct.

63. William Robinson is the owner of property located at 1 Belvidere Avenue, Lambertville, New Jersey. He has suffered damages as a consequence of the diminished value of that property proximately caused by Defendants' misconduct.

64. Carol and Thomas Ramsin are the co-owners of property located at 34 Belvidere Avenue, Lambertville, New Jersey. They have suffered damages as a consequence of the diminished value of that property proximately caused by Defendants' misconduct.

65. Kathleen Brown is the owner of property located at 19 Old York Road, Lambertville, New Jersey. She has suffered damages as a consequence of the diminished value of that property proximately caused by Defendants' misconduct.

### D. THE DEFENDANTS

66. Defendant City of Lambertville is a municipal corporation within Hunterdon County, and the State of New Jersey, with an address of 18 York Street, City of Lambertville, New Jersey 08530.

67.  Defendant City of Lambertville operated a municipal landfill from about 1940 to 1960 at Blocks 1073, Lots 33 and 33.01, Block 1090, Lots 4 and 5, Block 1091, Lots 1 and 101, in the City of Lambertville, and Block 8, Lot 51 in the adjacent municipality of Township of West Amwell, as designated in the respective municipal Tax Maps,

68.  Defendant John Chayko, P.E., is the City Engineer of the City of Lambertville.

69.  Defendant John Chayko, P.E. is employed by Suburban Consulting Engineers and provides engineering services to the City of Lambertville.

70.  Defendant Suburban Consulting Engineers, which has a principal office and business address of 96 U.S. Highway 206, Suite 101, Flanders, in Morris County, State of New Jersey, is the appointed consulting City Engineer of the City of Lambertville and has performed and continues to perform engineering services for the City of Lambertville.

71.  Academy Hill, Inc. a New Jersey corporation first incorporated in 1991, with an office and business address of 2531 Nottingham Way, Mercerville, Hamilton Township, Mercer County, State of New Jersey, is the owner of several of the properties that comprise the Landfill site, including Blocks 1073, Lots 33 and 33.01, Block 1090, Lots 4 and 5, and Block 1091, Lots 1 and 101, in the City of Lambertville; it has owned these parcels of land since February 13, 2003.

72.  River Valley Heights Corporation, a New Jersey corporation first incorporated in 1988, with an office and business address of 2 Madison Avenue,

Borough of Pennington, Mercer County, State of New Jersey, is the owner of another property within the Landfill site, Block 8, Lot 51, since May 5, 2005; River Valley Heights Corp. acquired Block 8, Lot 51 from Academy Hill, Inc, which had owned that parcel of land previously.

73.     The principal and officer of both Academy Hill, Inc. and River Valley Heights Corp. is Merrick Wilson.

74.     Defendant Merrick Wilson is an individual who resides at 1332 Moon Drive, in the Borough of Yardley, in Bucks County, Pennsylvania.

75.     Defendant E.I. du Pont de Nemours & Company ("DuPont") is a corporation duly organized under the laws of the State of Delaware with its principal place of business located at 974 Centre Road, Wilmington, DE 19805.

76.     DuPont was formerly known as DowDuPont, Inc.

77.     DuPont is, for purposes of determining diversity of citizenship, a citizen of the State of Delaware.

78.     Defendant, Corteva, Inc. ("Corteva") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at P.O. Box 80735, Chestnut Run Plaza 735, Wilmington, Delaware 19805.

79.     Corteva is, for purposes of determining diversity of citizenship, a citizen of the State of Delaware.

80.     On June 1, 2019, Dupont separated its specialty products business through the spinoff of Defendant DuPont de Nemours, Inc., which retained DuPont's legacy chemicals, materials science, and specialty products businesses. Dupont de

Nemours, Inc. is incorporated in Delaware, and its principal place of business is in Wilmington, Delaware.

81.   Dupont Specialty Products USA, LLC is a limited liability company incorporated under the laws of Delaware with its principal place of business located at 974 Centre Road, Wilmington, Delaware.

82.   Defendants, Dupont, Dupont Specialty Products USA, LLC, DuPont de Nemours, Inc. and Corteva, will collectively be referred to as "E.I.D.P." in this Complaint.

83.   Defendant, the Chemours Company ("Chemours Co."), is a corporation organized under the laws of the State of Delaware with its principal place of business located at 1007 Market Street, Wilmington, Delaware.

84.   Chemours Co. is, for purposes of determining diversity of citizenship, a citizen of the State of Delaware.

85.   Defendant, The Chemours Company FC, LLC ("Chemours FC"), is a corporation duly organized under the laws of the State of Delaware with its principal place of business located at 1007 Market Street, Wilmington, Delaware. As a limited liability company, Chemours FC's citizenship is determined by the citizenship of each of its members. *See, e.g., Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010).

86.   Chemours FC is, for purposes of determining diversity of citizenship, a citizen of the State of Delaware.

87.   Defendants, Chemours Co. and Chemours FC, will collectively be

19

referred to as "Chemours" in this Complaint.

88.      E.I.D.P. and Chemours made and distributed in commerce PFAS and other toxic chemicals described in this Complaint that were used in materials that were deposited in the Municipal Landfill of the City of Lambertville (hereafter "Landfill site"), and used in Teflon and other materials that were used by Taurus at 40 Washington Road, City of Lambertville, New Jersey (hereafter "Taurus site"), and which PFAS-containing materials contaminated the groundwater underlying the Taurus site and the Landfill site.

89.      PFAS and other toxins leached from the Taurus site and from the Landfill site and caused Plaintiffs' drinking water wells to be contaminated with PFAS.

90.      Defendant Taurus Corporation, $a/k/a$  Taurus Corp. or Taurus Electronics Corporation ("Taurus"),  was a New Jersey domestic for-profit corporate entity (ID 8791963000) organized in the State of New Jersey on or about May 25, 1956, with business and office locations at 40 Washington Street, Lambertville, Hunterdon County, New Jersey 07830 as well as 8 Coryell Street, Lambertville, Hunterdon County, New Jersey 07830.

91.      Defendant Taurus Corporation Liquidation Trust c/o John D. Kreuter, Trustee and Joanne P. Kreuter, Trustee was established following the dissolution of Taurus in or about 1989.

92.      JOHN DOE Defendants (#1-20) are fictitious names of individuals and business entities including corporations, limited liability companies, professional

20

corporations, partnerships, and other business entities or organizations or individuals whose identities cannot be ascertained as of the filing of this Complaint, that disposed of, or caused substances and materials that contained, polyfluoroalkyl substances (hereafter "PFAS") to be deposited into and/or released into the City of Lambertville Municipal Landfill, at Blocks 1073, Lots 33 and 33.01, Block 1090, Lots 4 and 5, Block 1091, Lots 1 and 101, in the City of Lambertville, and Block 8, Lot 51 in the adjacent municipality of Township of West Amwell, from which PFAS and other toxins leached from the City of Lambertville Municipal Landfill into the groundwater underlying the Connaught Hill, $a/k/a$ the Commons, section of the City of Lambertville, and aquifers underlying Connaught Hill and other parts of the City of Lambertville, and Township of West Amwell, contaminating Plaintiffs' wells, which Plaintiffs use for drinking water, for bathing, for cooking, for washing dishes, for washing clothing, for washing and feeding pets, for watering their vegetable gardens, and for other necessary daily living and recreational uses, which exposure and contamination proximately caused Plaintiffs to ingest or otherwise be exposed to PFAS for years, sometimes decades, and caused personal injury, property damage, property value diminution, and other torts and damages.

### III.   JURISDICTION AND VENUE

93.    Plaintiffs are citizens and residents of the State of New Jersey and Hunterdon County.

94.    The conduct at issue substantially occurred in Hunterdon County and the injuries and damages at issue were sustained in Hunterdon County.

95. All Defendants are subject to personal jurisdiction in this case because, at all times relevant to this case, they produced, manufactured, marketed, distributed, utilized, and/or sold PFAS and other Toxins to customers throughout New Jersey, and emitted PFAS and other Toxins into the environment in New Jersey. Plaintiffs' claims arise from and relate to Defendants' substantial contacts in New Jersey.

96. The City of Lambertville is a municipality existing pursuant to the laws of the State of New Jersey and is located in Hunterdon County.

97. Venue is proper in this Court pursuant to Rule 4:3-2 because Plaintiffs reside in and experienced harmful exposures to PFAS and other Toxins in Hunterdon County.

## IV.   PER AND POLYFLUOROALKYL SUBSTANCES

98. Plaintiffs' injuries and derivative damages were foreseeably caused by Defendants' misconduct, which resulted in the release of per-and polyfluoroalkyl substances ("PFAS") (referred to hereafter as "Toxins")[1].

99. The Toxins individually and in mixtures have the capacity to cause and/or to aggravate the injuries and disorders suffered by Plaintiffs as well as:

a. adverse reproductive outcomes including but not limited to infertility,

---

[1] PFAS chemicals are characterized by strong bonds between fluorine and carbon. Among the specific PFAS chemicals to which Plaintiffs were exposed were perfluorooctanoic acid (PFOA), perfluorooctanesulfonic acid (PFOS), and perfluorohexanesulphonic acid (PFHxS). Teflon is a brand name for polytetrafluoroethylene (PTFE), a synthetic fluoropolymer that is itself a type of PFAS. PFOA was used as a major component in the manufacture of Teflon at all relevant times. At times, replacement PFAS molecules which were also toxic, such as GenX may have been used. Further, Teflon over time degrades and smaller toxic PFAS compounds and microplastics which are also toxic result.

subfertility, premature births, spontaneous abortion, still birth, birth defects, developmental delays, genetic damage, and embryonic tumors;

b. malignancies, tumors and neoplasms including but not limited to breast cancer, kidney cancer, brain cancer, ovarian cancer, bladder cancer, sarcoma, testicular cancer, pancreatic cancer, colon cancer, liver cancer, and embryonal tumors; and

c. non-malignant disorders including diabetes, gestational diabetes, kidney disease, kidney failure, peripheral neuropathy, diabetic neuropathy, obesity, thyroid disease, endometriosis, elevated cholesterol, coronary artery disease, blindness, impaired vision, multiple sclerosis, sexual dysfunction and scoliosis.

100. These Toxins have the capacity to act in an additive and/or synergistic fashion such that exposures to these toxins and mixed exposures to these toxins and other toxic substances enhance their capacity to inflict and/or exacerbate the harm(s) of the type described above. The mechanisms by which these toxins inflict harm include but are not limited to:

a. apoptosis (cell death);

b. oxidative stress;

c. genotoxicity (spontaneous or *de novo* mutation);

d. epigenetic change;

e. diminished cellular nourishment;

f. impaired cell-to-cell communication;

g.  endocrine disruption;

h.  impaired or excessive immune response;

i.  intrauterine growth retardation;

j.  impaired organogenesis;

k.  the capacity to cross placental and brain barriers; and

l.  bio-persistence.

101.   There is no safe level of exposure to these Toxins.

102.   While exposure to these Toxins (e.g., quantum of exposure, duration(s) of exposure and timing of exposure relative to the adverse outcome) typically operate along a dose-response gradient such that increases in the amount and duration of exposure increase the potential for harm, even a single exposure in a small amount has the capacity to cause or aggravate the injuries sustained by Plaintiffs and cause other injuries. Further, with respect to PFAS non monotonic dose-response curves are also encountered.

103.   Plaintiffs' exposures to these Toxins and mixtures of these Toxins are sufficient to have proximately caused or aggravated Plaintiffs' bodily injuries, illness or death.

104.   Because of Defendants' intentional, knowing, reckless, grossly negligent, and negligent acts and omissions described in this Complaint, resulting in the contamination of the water and soil by these Toxins, to which Plaintiffs were exposed, Plaintiffs seek to recover compensatory and punitive damages and assert that Defendants are jointly and severally liable to Plaintiffs.

105.    These exposures occurred in and around Plaintiffs' residences, and at other locations where these Toxins were present.[2]

106.    Routes of exposure include ingestion, inhalation, and skin absorption. During gestation, individuals are exposed *in utero* as these toxins pass through the placenta. Newly born infants are also exposed through lactation while nursing.

107.    These Toxins are also bio-persistent, meaning that once they enter the body their injurious presence remains there for years and decades thereafter.

108.    These Toxins are also environmentally persistent, remaining in soil and groundwater for years and decades after being released into the soil or water, thereby continuing to be a source of continuing negative impact on the soil and groundwater, i.e. water used for drinking, bathing, cooking *etc*.

**V.    DEFENDANTS' ACTUAL AND CONSTRUCTIVE KNOWLEDGE OF THE DANGEROUS NATURE OF THE TOXINS AND THEIR CONDUCT**

109.    Defendants were or should have been aware of the harmful effects of these Toxins to humans and the environment since at least the 1950s.

110.    By the 1960s, Defendants knew, or reasonably should have known, that when fluorochemical products are released into the environment, that the PFAS component will migrate through the subsurface, mix with groundwater, resist natural degradation, and render drinking water contaminated and unsafe.

---

[2] Plaintiffs do not assert that they were exposed to aqueous film-forming foam (AFFF). Plaintiffs disclaim any such exposure and disclaim recovery of any portion of their damages determined by a factfinder to have been caused by exposure to AFFF.

25

111.   By the 1980s, Defendants knew, or reasonably should have known, that PFAS including PFOA and PFOS were reproductively toxic, developmentally toxic, and carcinogenic.

112.   By the 1980s, Defendants also knew or reasonably should have known that PFOA, PFHxS and PFOS could be absorbed into the lungs and gastrointestinal tract, potentially causing damage to the liver, kidneys, and central nervous system, in addition to other toxic effects, and that PFOA and PFOS are carcinogens which can contribute to genetic damage.

113.   By the early 1980s, Defendant knew or should have known that there was a correlation between PFAS exposure and human health effects. Manufacturers had observed bioaccumulation of PFAS in workers' bodies and birth defects in children of workers.

114.   By the 1980s, Defendants were or should have been aware that PFAS, including PFOA and PFOS, had been detected not only in the blood of workers at PFAS manufacturing facilities, but also in the blood of those who were exposed in residential and non-occupational settings.

115.   By the 1980s, Defendants knew or should have known that PFAS with longer carbon chains generally pose a greater risk of adverse health effects than PFAS with shorter carbon chains.

116.   By the 1980s, Defendants knew or should have known that, not only did PFAS persist and accumulate in the human body, including in human blood, but also that once PFAS are in the human body, they have a long half-life, meaning it takes

years before even half of the compound would be eliminated, assuming there were no additional exposures. It was understood by Defendants at all relevant times that a chemical that caused cancer in animal studies presents an unacceptable cancer risk to humans, unless the precise mechanism of action by which the tumors were caused was known not to be operative and/or not to occur in humans.

117. At all relevant times all Defendants knew or should have known the same information about PFAS as PFAS manufacturers.

118. Further, at all relevant times, some Defendants belonged to trade groups whose members possessed superior knowledge about the harms posed by the Toxins and PFAS relative to what was known by the general public and scientific and medical communities.

119. Once governmental entities and regulators began to focus on the toxicity, persistence and bioaccumulation of these Toxins, including PFAS, Defendants E.I.D.P. and Chemours individually and collectively attempted to delay or prevent regulation, litigation, and/or the discontinuation of the use of PFAS chemicals through lobbying, misleading and inaccurate assurances to the public, concealing and suppressing the disclosure of scientific research, and sponsoring and promoting industry-friendly research designed to manufacture doubt about the toxic effects of these toxins.

120. Despite concerns expressed by industry scientists and employees and by regulatory agencies, Defendants E.I.D.P. and Chemours continued to encourage and promote the use of fluorochemical products in a manner that was likely to pollute the

environment, including contamination of drinking water wells.

121. In the 1990s, Defendants E.I.D.P. and Chemours knew or should have known that a chemical manufacturing company's facility in West Virginia was causing large-scale drinking water contamination with PFAS.

122. After 2000, Defendants E.I.D.P. and Chemours continued to promote a narrative that the Toxins, including Teflon®, PFOA, PFNA, Surflon®, PFOS, and PFAS replacement chemicals, are safe and pose no risk to humans, despite internal knowledge to the contrary.

123. Defendants E.I.D.P. and Chemours were aware of, closely monitored, and discussed litigation respecting PFAS litigation beginning in the 1990s, and paid scientists, lobbyists, physicians, and communications and public relations professionals to downplay, deny, drown out, manufacture doubt about, and question evidence respecting the harm that their PFAS products, process chemicals, and activities, had caused and were continuing to cause communities such as those where the Plaintiffs lived and continue to live.

124. By at least 2010, additional research and testing performed by industry or Defendants E.I.D.P. and Chemours manufacturing and/or using PFAS, revealed multiple potential adverse health impacts among workers exposed to such PFAS, including PFOA, such as increased cancer incidence, hormone changes, lipid changes and thyroid and liver impacts, which Defendants' own scientists, lawyers and advisors recommended be studied further to assess the extent to which PFAS exposures were causing those effects.

28

125. The "C8 Science Panel" created as part of the settlement of a PFAS class action in connection with PFAS releases from a manufacturing site in West Virginia reviewed the available scientific evidence and concluded that a "probable link" exists between PFOA exposure and the serious (and potentially fatal) conditions of pregnancy-induced hypertension and preeclampsia.

126. By October 2012, the C8 Science Panel concluded that a probable link also exists between PFOA and five other conditions—high cholesterol, kidney cancer, thyroid disease, testicular cancer, and ulcerative colitis.

127. Research since then has continued to reinforce the adverse health effects associated with exposure to PFOA and other PFAS, including but not limited to cancers, birth defects, endocrine disruption, immunosuppression, genetic damage, neurotoxicity, and adverse reproductive endpoints.

## VI.   THE TAURUS SITE

128. The property known as 40 Washington Street, Block 1073, Lot 9 of the City of Lambertville Tax Map (hereafter the "Taurus site"), was the location of Lambertville High School from 1854 to 1960.

129. Taurus Corporation purchased the Taurus site from the Board of Education in 1961 and operated in the same building as the former Lambertville High School; Taurus also operated from 8 Coryell Street in the City of Lambertville prior to moving to the former high school location.

130. Taurus Corporation manufactured printed circuit board holders, Teflon computer terminals, punch cards, punch card sensors, badge readers and other

products at the Taurus site, holding itself out to be "specialists in the manufacturing of Standoff and Feedthrough Terminals insulated with Teflon®" according to a December 23, 1959 advertisement by Taurus

131. In 1988 Taurus Corporation ceased operation at the 40 Washington Street property.

132. After ceasing operations in 1988, Taurus began an investigation of the 40 Washington Street property pursuant to the Environmental Cleanup Responsibility Act ("ECRA").

133. According to the N.J. Department of Environmental Protection's (hereafter "NJDEP") files on the ECRA investigation of the Taurus Site, the Teflon terminals were made with Teflon® and brass which were purchased in rod form and turned on a lathe.

134. Teflon® is a brand name for a PFAS named polytetrafluoroethylene (PTFE) although Teflon also commonly contained perfluorooctanoic acid (PFOA) during the period Taurus operated at the Taurus Site.

135. Dupont discovered Teflon beginning in 1938, patented it in 1941 and trademarked it in 1945. Teflon was manufactured and widely distributed and used in consumer and other products and applications, in this State, nation, and throughout the world; Dupont continued to manufacture Teflon, and to discharge it and other PFAS products and by-products into the environment until the present, although the composition of Teflon® has changed.

136. The Taurus site ECRA investigation undertaken by The Whitman

Companies states that the Teflon terminals and Taurus's other products were often metal plated or anodized either on-site or sent out depending on the product and type of plating conducted.

137. PFAS were commonly used in the process of metal plating and anodizing at the Taurus site.

138. A report of an inspection conducted on March 29, 1988, by the NJDEP Bureau of Environmental Evaluation and Cleanup Responsibility Assessment (hereafter "BEECRA") states that many containers of hazardous materials were found on the Taurus site.

139. Taurus Corporation provided an inventory of hazardous materials used at the Taurus site including various degreasers and cleaners to NJDEP. Degreasing and cleaning agents often contained PFAS during the period Taurus Corporation operated at the Taurus site.

140. The Taurus site is a source of PFAS contamination of the drinking water wells in the Connaught Hill section of the City of Lambertville and drinking water wells in the adjacent Township of West Amwell.

141. The Taurus site has remained vacant since Taurus Corporation ceased operations in 1989.

142. Prior to Taurus occupying the property at 40 Washington Street in the City of Lambertville, the building there was the former Lambertville High School.

143. On May 22, 2018, the City of Lambertville settled litigation with Fair Share Housing Center (FSHC), requiring the City of Lambertville to prepare and

adopt a redevelopment plan for the Taurus site, including affordable housing, notwithstanding that the Taurus site is contaminated with PFAS.

144.    The City of Lambertville adopted an amended redevelopment plan for the Lambertville High School Redevelopment Area, i.e. the Taurus site, in 2024.

145.    In December 2024, Lambertville Mayor Andrew Nowick announced that the City of Lambertville would not extend its conditional redeveloper designation for the Lambertville High School Redevelopment Area, i.e. the Taurus site, which effectively halted development plans for the Taurus site; the mayor cited traffic and stormwater concerns as well as the PFAS contamination of nearby wells.

146.    This was not the first time that the City of Lambertville allowed affordable housing to be constructed on Connaught Hill, despite that the leachate from the City of Lambertville's Municipal Landfill was contaminating the drinking water wells of nearby residents, without any remediation efforts being undertaken by the City of Lambertville, or any of the other responsible parties, to protect the public health and safety of its residents, particularly residents of Connaught Hill.

147.    Habitat for Humanity constructed housing at the Connaught Hill section of the City of Lambertville, which properties have wells contaminated with PFAS, and whose residents were exposed to PFAS by ingestion and dermal contact through cooking, washing, bathing, drinking, and other typical uses of potable water.

148.    Taurus disposed of hazardous waste stored at the Taurus site in 1988. According to the NJDEP Hazardous Waste Manifest System shows this waste included ignitable waste [D001], corrosive waste [D002], cadmium [D006], chromium

32

[D007], copper cyanide [P029], oil spill cleanup residue [X725], and packed laboratory chemicals [X850]. No Right to Know Surveys or Air Permits were found related to the Taurus site.

149. NJDEP has set maximum contaminant levels (hereafter "MCL") for certain PFAS including PFOS at 13 parts per trillion (hereafter "ppt") (0.013 ug/L), and PFOA 14 parts per trillion (0.14 ug/L).

150. As of the filing of this Complaint, Plaintiffs and many others, who live both in the Township of West Amwell and the City of Lambertville, Connaught Hill section (*a/k/a* the Commons), have Toxins including PFOA, PFOS, and other PFAS contaminants, in their wells, above the MCL set by NJDEP in their well water, according to well tests performed by laboratories retained by the NJDEP.

151. A maximum contaminant level (MCL) is, according to NJDEP, the highest allowable concentration of a contaminant in water delivered to a user of a public drinking water supply. MCLs apply to public water systems, including public community and public non-transient noncommunity water systems.

152. Plaintiffs' private wells are not part of any public drinking water system, public community drinking water system or public non-transient noncommunity water system.

153. The MCLs for PFAS contaminants do not constitute a "safe" level of exposure to PFAS and there is no safe level of exposure to or ingestion of PFAS, nor is there any tolerance level below which exposure or ingestion is known to be safe.

154. NJDEP prepared "heat" maps of the contaminated wells and their

33

proximity to the City of Lambertville Municipal Landfill Site (maps 5-9 collected at Figure 1, attached hereto) and the Taurus Corp. Site (maps 4-8 collected at Figure 2, attached hereto).

155. According to NJDEP, within a four-mile radius of the Taurus site, all of the water provided by the public water supply systems as well as the private potable wells including in the area of Township of West Amwell and the City of Lambertville are derived from groundwater wells that tap into the underlying aquifer(s).

156. As of 2025, the PFAS contamination was observed in the four-mile radius area at a well located approximately 1,200 feet from the Taurus site; the well was sampled on August 8, 2024, and contained a PFOS concentration of 140 ppt, PFOA concentration of 37 ppt, PFHxS concentration of 110 ppt, and PFBS concentration of 21 ppt. These concentrations are above the MCLs which had been set by the United States Environmental Protection Agency (hereafter "USEPA") before the Trump Administration rescinded the MCLs for PFOS and PFOA and exceed the NJDEP Groundwater Quality Standards (hereafter "GWQS") for PFOS, and PFOA.

157. The PFAS values described above are undoubtedly considerably lower than the values that existed at earlier times when the deposition of PFAS was occurring and thereafter.

158. Samples collected from private potable wells in homes throughout the Connaught Hill section of the City of Lambertville to the north of the Taurus site and in a neighborhood to the south of the Taurus site were above USEPA and NJDEP

PFAS levels.

159.   A total of 67 wells with PFOA and/or PFOS concentrations above NJDEP and USEPA standards were identified by NJDEP as of 2025 within a half mile of the Taurus site.

160.   NJDEP is planning additional PFAS potable well sampling in the area affected by the Taurus site and the  Landfill site and it also continues to receive sampling results from individual property owners with contaminated private potable wells.

161.   Taurus operated from 1960 or 1961, at the Taurus site, until 1989.

162.   The Taurus site has not been remediated for PFAS or any other hazardous substances or Toxins.

163.   Academy Hill, Inc., River Valley Heights Corp., Roblyn Development Corp., and Merrick Wilson, and their officers, employees, successors and assigns, have taken no steps to investigate the extent of PFAS contamination at, or to remediate, the Taurus Corp Site and the Lambertville Municipal Landfill Site.

164.   Both the Lambertville Landfill site and the Taurus Corp Site have leaching PFAS contamination that is continuing to contaminate Plaintiffs' wells and drinking water through the migration of Toxins and other hazardous substances leaching from the sites into the groundwater supplying Plaintiffs' wells, from PFAS-containing waste deposited into the Lambertville Landfill site and discharged and released at the Taurus site, for several decades.

**VII   THE CITY OF LAMBERTVILLE MUNICIPAL LANDFILL SITE**

165. The City of Lambertville operated a landfill on Block 1073, Lots 33, 33.01, 34 and 34.01, Block 1090, Lots 4 and 5, Block 1091, Lots 1 and 1.01, as designated on the Tax Maps, all within the City of Lambertville, and on Block 8, Lot 51 as designated on the Tax Map, in the Township of West Amwell, from approximately 1946 or earlier, until 1960. These properties comprise the "Landfill site."

166. The City of Lambertville acquired Blocks 1073, Lots 33 and 33.01, Block 1090, Lots 4 and 5, Block 1091, Lots 1 and 1.01, and Block 8, Lot 51 on December 18, 1946, and owned these properties comprising the Landfill site until December 10, 1968. See Tax Map, attached hereto.

167. There is no documentation located thus far that shows the exact boundaries of the Landfill site, or the date that operations began. According to NJDEP's investigation of the Landfill site, reported in its Preliminary Assessment Report dated June 30, 2025, aerial imagery suggests that the Lambertville Landfill began operation between 1940 and 1951.

168. The Landfill site boundary is currently defined by NJDEP as a 13.8-acre area described in a 1946 indenture which records the City of Lambertville's acquisition of the properties that comprise the Landfill site.

169. A majority of the Landfill site is an undeveloped area consisting of multiple parcels bordering various streets and therefore the site does not have a street address.

170. Specifically, a portion of the Landfill site is also zoned as "paper" streets,

i.e., Southard Street and Allen Street. The Landfill site is bordered to the north by Coryell Road and single-family homes and to the south by Rocktown Lambertville Road also known as Quarry Street. To the west of the Landfill site are two single family homes and an undeveloped wooded area. To the east of the Landfill site is an undeveloped wooded area.

171. According to NJDEP, the chain of title of the Landfill site shows that the City of Lambertville acquired the properties comprising the Landfill site on December 18, 1946 and granted the properties comprising the Landfill site to Mamie Lewis and Walter Lewis on December 10, 1968; and they granted the Landfill site properties to Harold Siegel and Harry Hartpence on October 7, 1971; and they granted the properties comprising the Landfill site to Merritt-Pierce Corporation on January 11, 1973; and it granted the properties comprising the Landfill Site to D.A.C. Garden Court, Inc. on October 3, 1974; and it granted the properties comprising the Landfill site to Southwood Developers on September 3, 1975; and it granted the properties comprising the Landfill site to Stefan Redi, Barbara Colosky and Donald Connor on March 25, 1988; and they granted the properties comprising the Landfill site to Riverview Heights Corp. on July 27, 1988; and it granted the properties comprising the Landfill site to Academy Hill, Inc. c/o T. Oaks, Academy Hill, Inc. and River Valley Heights Corp. on February 13, 2003.

172. Academy Hill, Inc. c/o T. Oaks, Academy Hill, Inc. and River Valley Heights Corp. have a shared address indicating they may be controlled by the same individual, Merrick Wilson, or business entity owned by the same individual.

37

173. After the Landfill was closed by the City of Lambertville in or about 1960, illegal dumping at the Landfill site continued, and the City of Lambertville did nothing to prevent the occurrence of illegal dumping there.

174. During the Landfill's operation and after it closed, the City of Lambertville did nothing to secure the Landfill site to prevent its leachate from entering the environment.

175. The Landfill site is a source of PFAS contamination in the Connaught Hill section of the City of Lambertville. See Figure 1.

176. No remediation of the surface soil or subsurface soils, or the waste deposited in the Landfill, or the groundwater in the aquifer(s) underlying the Landfill site and beyond, has taken place at the Landfill site, by the current owner(s), the City of Lambertville, the intervening owners, or NJDEP, and upon information and belief, there are no current plans to remediate the Landfill site, or the Taurus site, which will continue to adversely impact groundwater for the foreseeable future.

177. Upon information and belief, no notices of violation have issued nor have any enforcement actions been taken by NJDEP with respect to the Landfill site or the Taurus site.

178. The Landfill and Landfill site were not properly closed by the City of Lambertville, even under the statutes, regulations, codes or ordinances that existed for closing landfills at that time, between 1960 and 1968, or thereafter.

179. No Right to Know Surveys, Hazardous Waste Manifest records, or other NJDEP files were found related to the Landfill site, and the City of Lambertville

Landfill is still not listed on the Landfill website maintained by NJDEP.

180. A two-acre property in the southwest corner of the Landfill site, Block 1073, Lots 34 and 34.01, currently operate as the Lambertville City Garage and is owned by the City of Lambertville.

181. The Landfill site is also planned to be redeveloped as described in the City's 2024 amended plan for the Lambertville High School Redevelopment Area, despite the City of Lambertville's known concerns about PFAS contamination of the drinking water wells, as well as traffic and stormwater runoff.

182. The City of Lambertville Municipal Landfill was, during its operation and afterward, a publicly owned property, owned by the City of Lambertville; it was referred to as "the dump" in City of Lambertville municipal Council records, and meeting minutes.

183. The unlawful dumping of waste in the Municipal Landfill after 1960 included PFAS-contaminated waste, which contaminated and is continuing to contaminate Plaintiffs' wells and proximately cause Plaintiffs' personal injuries and property damages and other damages, requiring the relief set forth herein.

184. The City of Lambertville knew from known facts that existing wells in the Connaught Hill section of the City of Lambertville would be adversely impacted by the leachate from the landfill site that would naturally migrate down into the water table and contaminate the underlying groundwater aquifer from which the wells draw their water.

185. The City of Lambertville knew from existing known facts that Plaintiffs'

wells, or wells to be drilled in the Connaught Hill section, would be adversely impacted and polluted by the migration of leachate from the landfill, which the City of Lambertville did nothing to stop or prevent.

186.   Not only did the City of Lambertville not restrict private drinking water wells from being placed on Connaught Hill, in fact, the City of Lambertville continued to allow development of residential housing on Connaught Hill, where there is no public water system, and residents rely on groundwater for drinking water, i.e. they rely on well water drawn from the groundwater polluted by the City of Lambertville's Landfill and Landfill site.

187.   The City of Lambertville created a dangerous condition at its Landfill and Landfill site, i.e. PFAS-contaminated waste is in the Landfill and it is leaching to the subsurface soils and migrating down into the groundwater and aquifers that supply Plaintiffs' well water.

188.   At no time did the City of Lambertville warn residents of Connaught Hill or developers of any housing there or residents of any other area that could be affected by leaching pollution from the Landfill and Landfill site that they should curtail their intake of well water, stop drinking well water altogether, and/or invest in a filtration system to remove hazardous substances from the well water. Instead, the City of Lambertville issued certificates of occupancy to residents, and allowed them to live there, and drink the water, without having tested the well water to determine if it was polluted by the leaching contamination from the City of Lambertville's own Landfill Site, or warning the residents to test the well water

40

before drinking it, bathing in it, cooking with it, swimming in it, or otherwise exposing themselves to it.

189.   When the City of Lambertville sold the Landfill site for development to Academy Hill, Inc., the City of Lambertville did not first remediate the landfill site and did not require Academy Hill, Inc. to remediate the Landfill site, even though it was reasonably foreseeable that the contaminated waste in the Landfill site had migrated and would continue to migrate to the groundwater and contaminate Plaintiffs' drinking water wells.

190.   The Landfill site has never been remediated, and the unreasonably dangerous condition of the Landfill site and its presence as a continuing source of drinking water contamination remains to this day.

191.   As a public entity, the City of Lambertville is liable for personal injuries and property damages caused by a dangerous condition of its property that proximately caused Plaintiffs' personal injuries and property damages and other damages, because the dangerous condition of the Landfill site created a reasonably foreseeable risk of the kind of injury which occurred, i.e. Plaintiffs' wells became contaminated.

192.   The City of Lambertville's employees' negligent and wrongful acts or omissions within the scope of their employment created the dangerous condition of the Landfill site, while they were acting or not acting within the scope of their employment.

193.   The City of Lambertville had actual or constructive notice of the

41

dangerous condition it created a sufficient time prior to the injuries and property damages Plaintiffs are now suffering to have taken measures to protect against the dangerous condition, such as remediation, including preventive measures, and in terms of current measures, delineating the contaminated plume of groundwater to determine the limits of the dangerous condition's effects, and excavation of the contaminated waste in the subsurface soils to prevent continued migration to the groundwater, including but not limited to leachate collection pipes, heat treatment of the PFAS source to eradicate the PFAS compounds which continue to pollute the aquifers that supply Plaintiffs' wells, and any other method of remediation, excavation and removal of the PFAS-contaminated waste and other Toxins, and proper closure of the Landfill site, in accordance with the laws governing legacy landfills, including but not limited to N.J.S.A. 13:1E-125.1 *et seq.*  and N.J.A.C. 7:26-2A.9 *et seq.*.

194.    Under the Landfill Closure Act, N.J.S.A. 13:1E-125.1 *et seq.*, the Legislature has established requirements that landfill operators and former operators such as the City of Lambertville must comply with including measures to prevent and mitigate pollution and to minimize impacts to human health and the environment, maintenance of escrow accounts to fund post-closure monitoring and operational costs, including posting financial assurance, and other measures. The City of Lambertville is in violation of the Landfill Closure Act and regulations promulgated thereunder.

195.    NJDEP has established Interim Soil and Soil Leachate Remediation

42

Standards for certain PFAS, including PFOA, PFOS, and GenX (including Ingestion -Dermal and Migration to Groundwater), with which the City of Lambertville and the current owner(s) of the Taurus site and the Landfill site, are, upon information and belief, out of compliance.

196.   The City of Lambertville's acts and omissions and those of its employees, its Engineers, and appointed and elected officers during operation of the Landfill site, and afterward, after 1960, were palpably unreasonable and they remain palpably unreasonable; the City of Lambertville and its employees and Engineer have no plans to cleanup, or to remove the PFAS contamination to this day.

197.   The City of Lambertville did not properly construct the Municipal Landfill with either liners or containment structures to avoid leachate including PFAS-containing materials and Toxins in the Landfill from seeping into the subsurface soils and migrating down into the underlying aquifers which supply and are the source of groundwater for Plaintiffs' wells, and after the Landfill site was closed, the City of Lambertville did not cap it, cover it or secure the Landfill site from unlawful dumping or from continuing to be a source of leachate migrating down into the aquifers supplying Plaintiffs' water wells.

198.   The City of Lambertville did not properly operate the Municipal Landfill and created an unreasonably dangerous condition, which caused PFAS waste to migrate down into the groundwater and aquifers that supply Plaintiffs' wells, thereby contaminating their drinking water and water used for bathing, cooking and all other household and property uses.

199.    The City of Lambertville did not notify NJDEP that it had a Landfill site that it had not properly closed, contrary to N.J.A.C. 7:26-2A.9(c)2; notwithstanding that that regulation was adopted after the closure of operations, when it came into effect, the City of Lambertville had a continuing duty to comply and should have complied with the regulation at that time, especially because unregulated unlawful dumping of waste continued at the Landfill site after the operations there formally closed, and the City of Lambertville did nothing to stop it or was ineffective at stopping it.

200.    The City of Lambertville contracted to sell the land comprising and used as the Landfill site without having complied with N.J.A.C. 7:26-2A-9 (c)3, describing to Academy Hill, Inc. the landfill operations that occurred at the Landfill site and the timeframe of such operations.

201.    Upon information and belief, Academy Hill, Inc. did not perform a Preliminary Assessment report before acquiring the Landfill Site, nor a Site Investigation Report, and it is liable for the cleanup of the Landfill Site, pursuant to the Spill Compensation and Control Act, N.J.S.A. 58:23.11g.(d )2, case law arising thereunder, and common law.

202.    The City of Lambertville has not created a Post-Closure Plan for the Landfill site in violation of N.J.A.C. 7:26-2A.8(j) and N.J.A.C. 7:26-9(c )4, which provides that a detailed description of the landfill shall be recorded, along with the deed, with the appropriate county recording office, which description shall include the general types, locations, and depths of wastes on the site, the depth and type of

44

cover material, the dates the landfill was in use and all such other information as may be of interest to potential landowners, and shall remain in the record in perpetuity. The regulation applicable to the sale also provide that the deed shall also provide notice that any future disruption of the closed landfill shall require prior approval from the NJDEP in accordance with N.J.A.C. 7:26-2A.8(j), and N.J.A.C. 7:26-2A.9(c)4.

203.    According to NJDEP regulations, the City of Lambertville's Post-Closure Plan-- had the City of Lambertville created one-- was to have set forth a period of care for the lands comprising the Landfill site, continuing for thirty (30) years after the date of the closure of the landfill site, or until it has been adequately demonstrated that to protect human health and the environment. If the NJDEP decides that a period of care longer than 30 years is warranted for the period of care in the Post-Closure Plan, NJDEP shall provide public notice of its intention to extend the period, per N.J.A.C. 7:26-2A.9 (c )6.

204.    The City of Lambertville also did not comply with escrow requirements (N.J.A.C. 7:26-2A.9(g)), public notice requirements of the Post-Closure Plan (N.J.A.C. 7:26-2A.9(d)9), and closure and maintenance requirements (N.J.A.C. 7:26.2A-9(d)7 and 7:26-2A-9(d)8), including an engineering design plan.

205.    To this day, the City of Lambertville is not monitoring the PFAS contamination escaping from the Landfill Site or the Taurus site, and migrating to Plaintiffs' wells and other areas, and down into the groundwater; NJDEP's successive rounds of testing the groundwater has not delineated the extents of the PFAS

contaminated plumes yet, or where it ends, yet.

206.   Plaintiffs have mitigated their damages by applying to the State's Spill Fund Administrator for funding to install, and many have installed, point of entry treatment ("POET") charcoal active filter systems in an attempt to remove PFAS contaminants from their well water.

207.   Plaintiffs have borne and continue to bear the costs of bottled water, operation costs of the POET systems, and occasionally house renovations needed to install the POET systems. Plaintiffs' properties have been damaged, and devalued, and Plaintiffs have lost an essential aspect of their property rights: clean water.

208.   The City of Lambertville's negligence, and wrongful acts and omissions, created a public and private human health hazard, and extensive property damage, harming and injuring Plaintiffs, which dangerous condition of its property it had actual or constructive notice of, and which dangerous condition and its consequences to Plaintiffs' health and property, and the groundwater, were reasonably foreseeable, and which negligence and wrongful acts and omissions were and continue to be palpably unreasonable.

## VII.   DAMAGES

209.   In addition to the physical injuries and conditions described above, all Plaintiffs have suffered extreme emotional distress caused by the ingestion of contaminated water and the unavailability of pure potable water; and have suffered and will continue to suffer a diminution of their ability to enjoy life's pleasures and of the quality of their lives.

46

210. Plaintiffs have lost the use of their water wells as a consequence of the foregoing, have suffered a depreciation in value of their homes, damage to their plumbing fixtures and pipes, and experienced other property have damage.

211. Plaintiffs have suffered the risk of contracting cancers and other disorders in the future as a consequence of having been exposed to the contaminated water.

212. As a consequence of the foregoing each of the Plaintiffs have been deprived of the services, consortium, care and society of the other plaintiffs who are members of their families.

213. With respect to spouses their damages include the loss of companionship, comfort, physical intimacy, household duties, society, sexual relations and the economic value of these deprivations.

214. With respect to parents and natural guardians these damages include their damages include the economic value of medical care and other services that they were required to provide as a consequence of their child's injuries or conditions, as well as the pecuniary value of lost household services and financial support that the injured plaintiffs would have provided.

215. As a consequence of the proximately caused deaths of certain injured Plaintiffs, their survivors and Estates have suffered damages and pecuniary loss recoverable under New Jersey law in wrongful death and survival actions.

216. Plaintiffs have filed administrative claims forms with the City of Lambertville, pursuant to the New Jersey Tort Claims Act, as applicable to

47

municipalities.

## CLAIMS FOR RELIEF

### Count I:
### Negligence
### Plaintiffs v. All Defendants

217.    Plaintiffs incorporate the allegations contained in all paragraphs of this Complaint as if fully restated herein.

218.    All Defendants knew or should have known that the presence and/or use of the Toxins and/or the discharge of the Toxins into the air, soil, groundwater and drinking water was hazardous to human health and the environment.

219.    All Defendants knew or should have known that it was unsafe and/or unreasonably dangerous to discharge or permit the release of the Toxins into the environment in proximity to surrounding residential communities, including Plaintiffs' residences.

220.    All Defendants knew or should have known that exposure to the Toxins could proximately cause or aggravate the injuries and illnesses from which Plaintiffs suffer.

221.    Plaintiffs were foreseeable victims of the exposure to the Toxins that polluted and contaminated Plaintiffs' wells as a consequence of Defendants' conduct which exposures were capable of causing the diseases from which Plaintiffs suffer, which Defendants knew or should have known.

222.    Defendants should have undertaken the research necessary to ascertain if the Toxins could adversely impact health, whether their use, manufacture, and/or

48

sale of the Toxins was likely to enter into the environment and whether as a consequence of the use, manufacture and/or sale of the Toxins people such as Plaintiffs would be injured.

223. All Defendants negligently handled the Toxins and failed to prevent the injury of people such as Plaintiffs who were exposed to the Toxins maintained, used, manufactured and/or sold by Defendants.

224. Defendants had a duty to take all necessary steps to prevent Plaintiffs' exposure to the Toxins.

225. Defendants had the duty to undertake all studies necessary to prevent the Toxins from causing harm to Plaintiffs and others.

226. Defendants had a duty to warn Plaintiffs about the possible' exposure to the Toxins compounds and how to avoid that exposure.

227. Defendants breached the duty owed to Plaintiffs to prevent their exposure to the Toxins.

228. Defendants breached the duty to undertake all studies necessary to prevent the Toxins from causing harm to Plaintiffs and others.

229. Defendants breached the duty that it owed to Plaintiffs to warn them about their possible exposure to the Toxins and how to avoid that exposure.

230. Defendants' conduct, regarding the handling, release and discharge of the Toxins was unreasonable.

231. Defendants' conduct, which permitted Plaintiffs' exposure to the Toxins, was unreasonable.

232.    Defendants' failure to undertake all studies necessary to prevent the Toxins from causing harm to Plaintiffs and others was unreasonable.

233.    Defendants' failure to warn Plaintiffs about their possible exposure to the Toxins and how to avoid that exposure was unreasonable.

234.    Defendants are jointly and severally liable for all illnesses and injuries sustained by Plaintiffs arising out of exposure to the Toxins.

235.    The acts and omissions of Defendants, including but not limited to those set forth above, were negligent.

236.    Defendants' acts and omissions, including but not limited to those set forth above, proximately caused injury and derivative damages to Plaintiffs and damage to Plaintiffs' properties.

237.    Plaintiffs have suffered and/or will in the future suffer damage, including but not limited to damage in the form of bodily injury, loss of body parts, potential infertility, mental anguish, inconvenience, impaired quality of life, economic loss, medical expenses, loss of enjoyment of life's pleasures, property damage, loss of the property right of clean water, diminution of property value, and disability, wrongful death and survival damages, and they were otherwise damaged.

### Count II:
### Gross Negligence and Reckless Misconduct
### Plaintiffs v. All Defendants

238.    Plaintiffs incorporate the allegations contained in all paragraphs of this Complaint as if fully restated herein.

239.    At all relevant times, Defendants committed acts and omissions with

50

respect to the Toxins with actual malice and/or with a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions and/or with gross negligence.

240. Such conduct was motivated by greed in an effort to maximize profit, or unreasonably minimize expense, and in disregard of their duties and responsibilities to the public and to Plaintiff.

241. The acts and omissions of Defendants, including but not limited to those set forth above, were grossly negligent.

242. Defendants' acts and omissions, including but not limited to those set forth above, proximately caused injury to Plaintiffs.

243. Defendants are jointly and severally liable for all illnesses and injuries sustained by Plaintiffs arising out of exposure to the Toxins.

244. Plaintiffs have suffered and/or will in the future suffer damage, including but not limited to damage in the form of bodily injury, loss of body parts, potential infertility, mental anguish, inconvenience, impaired quality of life, economic loss, medical expenses, loss of enjoyment of life's pleasures, property damage, loss of the property right of clean water, diminution of property value, and disability, wrongful death and survival damages, and they were otherwise damaged.

**Count III:**
**Absolute Liability (Abnormally Dangerous Activities)**
**Plaintiffs v. All Defendants**

245. Plaintiffs incorporate the allegations contained in all paragraphs of this Complaint as if fully restated herein.

51

246.     At all relevant times, Defendants sold, disposed of, discharged, released and/or emitted hazardous Toxins into the environment adjacent to Plaintiffs' residences.

247.     As a result of Defendant E.I.D.P. and Chemours sale of Toxins to Defendant Taurus and others for use at the Taurus Site; and the discharge of the Toxins by Defendants City of Lambertville and Taurus from the Landfill Site and Taurus Site into the soil, and the groundwater under Plaintiffs' property, Plaintiffs were exposed to and harmed by the Toxins and suffered property damage.

248.     The manufacturing, sale, utilization, disposal, and discharge of the Toxins by Defendants E.I.D.P., Chemours, Taurus and Taurus Electronics Corp. and by the City of Lambertville and successive owners of the Landfill Site and Taurus Corp Site, including Academy Hill, Inc., River Valley Heights Corp., Roblyn Dev. Corp. Merrick Wilson, and other Defendants, constitute abnormally dangerous activities that introduce an unusual danger in the community.

249.     Defendants' activities in selling, manufacturing, utilization, disposal, and discharging the Toxins presented a high degree of risk and of harm to the person, land, groundwater, and/or chattels of others.

250.     It was likely that the harm resulting from Defendants' activities would be great.

251.     The exercise of reasonable care does not eliminate the risk of harm posed by Defendants' activities (and Defendants did not exercise reasonable care).

252.     The dangerous attributes of and risk posed by all Defendants' activities

52

outweighed their value to the community.

253. At all relevant times, the risk of the Defendants' abnormally dangerous activities outweighed the value to the community.

254. Defendants' acts and omissions in selling, manufacturing, utilizing, disposing, and discharging hazardous chemicals proximately caused the contamination to Plaintiffs' properties and injuries to Plaintiffs, making the Defendants absolutely liable for the harm caused by such contamination.

255. All Defendants foreseeably contributed to the contamination of the environment with the Toxins, and all subsequently contributed to Plaintiffs' exposure to these chemicals, thereby causing injury to them.

256. All Defendants are jointly and severally liable for all illnesses and injuries sustained by Plaintiffs arising out of exposure to the Toxins.

257. Defendants' acts and omissions, including but not limited to those set forth above, proximately caused injury to Plaintiffs.

258. Plaintiffs have suffered and/or will in the future suffer damage, including but not limited to damage in the form of bodily injury, loss of body parts, potential infertility, mental anguish, inconvenience, impaired quality of life, economic loss, medical expenses, loss of enjoyment of life's pleasures, property damage, loss of the property right of clean water, diminution of property value, and disability, wrongful death and survival damages, and they were otherwise damaged.

259. As a direct and proximate result of Defendants' shipments and discharges of the Toxins, Plaintiffs have and will continue to suffer damages.

## Count IV:
### Strict Liability (Failure to Warn)
### Plaintiffs v. All Defendants

260. Plaintiffs incorporate the allegations contained in all paragraphs of this Complaint as if fully restated herein.

261. Defendants developed, tested, assembled, manufactured, packaged, labeled, prepared, distributed, marketed, and/or supplied the Toxins for sale and sold such products in the ordinary course of their businesses.

262. Upon information and belief, Defendant Taurus and others utilized the Toxins supplied by Defendants E.I.D.P. and Chemours in a reasonably foreseeable and intended manner.

263. The Toxins sold, manufactured, and used by Defendants E.I.D.P., Chemours, and Taurus were unreasonably dangerous to residents of the surrounding communities, including Plaintiffs, without adequate warnings and instructions to prevent discharge of the Toxins into the environment, specifically, Plaintiffs' well water, whereupon, the Toxins would accumulate inside the bodies of residents in surrounding communities, including Plaintiffs.

264. Defendants knew or should have known that the Toxins they sold, used, and discharged into the environment would cause contamination of the groundwater that supplies the wells of residents and would, upon ingestion, and other exposure, accumulate in the blood serum and bodily tissues of residents living in the surrounding communities, including Plaintiffs, causing them to suffer illness and disease.

265. Defendants failed to advise Plaintiffs and those foreseeably exposed to the Toxins about the risks these PFAS-containing products posed to foreseeable victims, such as Plaintiffs, who would ingest them in their drinking water, and about techniques that could be employed to reduce or eliminate these risks, including filter and treatments systems on the wells, and/ or remediation of the Landfill Site and the Taurus Corp Site.

266. Defendants had actual knowledge of the health hazards associated with the Toxins through animal studies conducted by researchers employed or contracted by such Defendants and though experience with Defendants' own workers, but failed to share such information with purchasers, users, or those foreseeably exposed to their products, such as Plaintiffs whose well water supplies were contaminated by the discharges of the Toxins at the Landfill Site and the Taurus Corp Site.

267. Defendants acted with reckless indifference to the health and safety of residents in communities near the Landfill Site and the Taurus Site where the toxic PFAS compounds were used, such as Teflon®, by failing to provide adequate warnings of the known dangers of such PFAS-containing products when discharged into the environment whereupon it would inevitably reach the groundwater and pollute Plaintiffs' and others wells, and be ingested by nearby residents, including Plaintiffs.

268. All Defendants had a duty to warn those exposed to the Toxins of the dangers of releasing the Toxins into the environment, including Plaintiffs.

269. Defendants breached the above non-delegable duties by failing to

adequately warn and provide sufficient instructions to those who might be exposed to the Toxins including Plaintiffs.

270. All Defendants are jointly and severally liable for all illnesses and injuries sustained by Plaintiffs arising out of exposure to the Toxins.

271. Plaintiffs have suffered and/or will in the future suffer damage, including but not limited to damage in the form of bodily injury, loss of body parts, potential infertility, mental anguish, inconvenience, impaired quality of life, economic loss, medical expenses, loss of enjoyment of life's pleasures, property damage, loss of the property right of clean water, diminution of property value, and disability, wrongful death and survival damages, and they were otherwise damaged.

## Count V:
## Private Nuisance
### Plaintiffs v. Defendants City of Lambertville, Engineer John Chayko, P.E., Suburban Consulting Engineers, Inc., Taurus, Academy Hill, Inc., River Valley Heights Corp., Merrick Wilson and John Does 1-20

272. Plaintiffs incorporate the allegations contained in all preceding paragraphs as if fully restated herein. Defendants' acts and omissions with respect to the release of the Toxins in the environment resulted in the contamination of the soil and water, including but not limited to Plaintiffs' groundwater and well supply, and have thus unreasonably interfered with Plaintiffs' use and enjoyment of their property, invading the home and body of all Plaintiffs.

273. Defendants' acts and omissions with respect to the release of the Toxins has made Plaintiffs' water supply unfit for consumption and other domestic purposes.

274. Defendants' unreasonable interference with the use and enjoyment of

56

Plaintiffs' property including the right to clean water constitutes a continuous invasion of their rights.

275.  Defendants all contributed to the contamination of the groundwater underlying Plaintiffs' properties with the Toxins, and all caused and/or substantially contributed to a private nuisance from which Plaintiffs now suffer.

276.  Plaintiffs have suffered and/or will in the future suffer damage, including but not limited to damage in the form of bodily injury, loss of body parts, potential infertility, mental anguish, inconvenience, impaired quality of life, economic loss, medical expenses, loss of enjoyment of life's pleasures, property damage, loss of the property right of clean water, diminution of property value, and disability, wrongful death and survival damages, and they were otherwise damaged.

**Count VI:**
**Public Nuisance**
**Plaintiffs v. Defendants City of Lambertville, Engineer John Chayko, P.E., Suburban Consulting Engineers, Inc., Taurus, Academy Hill, Inc., River Valley Heights Corp., Merrick Wilson and John Does 1-20**

277.  Plaintiffs incorporate the allegations contained in all preceding paragraphs as if fully restated herein.

278.  Defendants' conduct detailed above unreasonably interfered with a right common to the general public, including the public's right to be free from groundwater contamination in the air breathed and water consumed, and in which its members bathe, shower, cook, and swim.

279.  Defendants' conduct detailed above unreasonably and significantly interfered with the public health and public safety by contaminating the groundwater

57

and soil with toxic and carcinogenic chemicals including but not limited to PFAS.

280.   Defendants' conduct was of a continuing nature, and/or produced a long-lasting effect, and Defendants knew and/or had reason to know that it would have a significant and negative effect on the public's rights.

281.   Plaintiffs suffered harm of a kind different from that suffered by other members of the public exercising the right common to the general public.

282.   Defendants' acts and omissions with respect to the release of the Toxins in the environment including the soil, and water resulted in the contamination of Plaintiffs' homes and private water supplies, i.e. the groundwater underlying their properties which supply their wells.

283.   Defendants' unreasonable interference with the use and enjoyment of Plaintiffs' property constitutes a continuous invasion of their rights.

284.   Defendants all contributed to the contamination of the environment with the Toxins, and all subsequently contributed to the public nuisance imposed on Plaintiffs.

285.   Defendants' creation of a continuing public and/or private nuisance has damaged Plaintiffs in the form of bodily injury, emotional distress, and other damages all of a type not common to the general public, for which Defendants are liable.

286.   Plaintiffs have suffered and/or will in the future suffer damage, including but not limited to damage in the form of bodily injury, loss of body parts, potential infertility, mental anguish, inconvenience, impaired quality of life,

58

economic loss, medical expenses, loss of enjoyment of life's pleasures, property damage, loss of the property right of clean water, diminution of property value, and disability, wrongful death and survival damages, and they were otherwise damaged.

**Count VII:**
**Past and Continuing Trespass**
**Plaintiffs v. Defendants City of Lambertville, Engineer John Chayko, P.E., Suburban Consulting Engineers, Inc., Taurus, Academy Hill, Inc., River Valley Heights Corp., Merrick Wilson and John Does 1-20**

287. Plaintiffs incorporate the allegations contained in all preceding paragraphs as if fully restated herein.

288. As related above, Plaintiffs were owner(s) and/or possessor(s) of real property and reside or resided on those properties, the drinking water for which was supplied by wells.

289. Defendants negligently, recklessly, and/or intentionally failed to properly control, apply, use and/or dispose of the Toxins resulting in its discharge into the environment entering, invading, intruding, and injuring the rights of Plaintiffs to possess and enjoy their properties including the groundwater underlying the Plaintiffs' properties, which supply their wells.

290. Plaintiffs have not consented and do not consent to the contamination of their groundwater, wells and properties as alleged herein, and Defendants knew or reasonably should have known that Plaintiffs would not consent to such.

291. Defendants all caused and/or substantially contributed to the contamination of the environment including the groundwater with the Toxins, and all subsequently caused and/or contributed to the past and continuing trespass

59

imposed on Plaintiffs.

292.   As a direct and proximate result of Defendants' acts and omissions as alleged herein, the soil and drinking water wells on Plaintiffs' properties have been contaminated with the Toxins, causing significant personal injuries and damage, including actual, consequential, and nominal damages as described above.

## Count VIII:
## Strict Liability (Defective Design)
## Plaintiffs v. Defendants E.I.D.P. , Chemours, and Taurus

293.   Plaintiffs incorporate the allegations contained in all preceding paragraphs as if fully restated herein.

294.   Defendants designed, manufactured, and sold the Toxins that were used at the Taurus Site and which were discharged and released there and also discharged and released or deposited onto the soil at the Landfill Site and elsewhere by Defendant Taurus.

295.   As manufacturers and sellers of the Toxins, Defendants E.I.D.P., Chemours, and Taurus had a duty to make and sell products that are reasonably fit, suitable, and safe for their intended or reasonably foreseeable uses.

296.   Defendants owed that duty to direct users of its products, foreseeable users of its products, and also any person who might reasonably be expected to come into contact with these products and the Toxins of which they are made, after being released into the environment, such as Plaintiffs.

297.   Defendants owed that duty to direct users of its products, to reasonably foreseeable users of their products, and also to any person who might reasonably be

60

expected to come into contact with these products, in the environment, such as Plaintiffs.

298. Defendants' products were used in a reasonably foreseeable manner and without substantial change in the condition of such products and were defective and unfit for their reasonable use.

299. Defendants E.I.D.P. and Chemours knew or should have known that use of their products, including by Taurus, would result in the spillage, discharge, and/or release of the Toxins into the environment and would contaminate the soil and ground water including the drinking water of surrounding communities, including Plaintiffs' wells.

300. Defendants knew or should have known that its products including the Toxins would eventually come into contact with and harm residents in surrounding communities, including Plaintiffs.

301. Defendants' products were defective in design and unreasonably dangerous because, among other things:

    a. the Toxins cause extensive and persistent contamination when used in a reasonably foreseeable and intended manner; and

    b. the Toxins cause contamination in the environment, including the soil, and groundwater, which are the sources of drinking water to citizens in the surrounding communities, including Plaintiffs, and pose significant threats to their health, safety, and welfare.

302. At all relevant times, Defendants' products, which they designed,

manufactured, and sold were dangerous to an extent beyond that which would be contemplated by the ordinary consumer, and well owner.

303.   The foreseeable risk to public health and welfare, including that of Plaintiffs, posed by Defendants' products outweighed the cost to Defendants of reducing or eliminating such risk.

304.   Defendants knew or should have known about reasonably safer and feasible alternatives to their products that contained the Toxins.

305.   As a direct and proximate result of Defendants' acts and omissions, Plaintiffs have and will continue to suffer damages, including but not limited to damage in the form of bodily injury, loss of body parts, potential infertility, mental anguish, inconvenience, impaired quality of life, economic loss, medical expenses, loss of enjoyment of life's pleasures, property damage, loss of the property right of clean water, diminution of property value, and disability, wrongful death and survival damages, and they were otherwise damaged.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiffs request that this Court enter judgment against Defendants for compensatory and non-compensatory and punitive damages, together with interest, costs, attorneys' fees and all such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

## DESIGNATION OF TRIAL COUNSEL

62

PLEASE TAKE NOTICE THAT Daniel J. Woodard, Esq. is hereby designated as Trial Counsel in the within matter pursuant to R. 4:25-4.

## DEMAND FOR INSURANCE INFORMATION

Pursuant to R. 4:10-2(b), demand is hereby made that you disclose to the undersigned whether there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment.

( ) Yes     ( ) No

If the answer is "yes", attach a copy of each or in the alternative, state under oath or certification:

a. Policy number;

b. Policy type (occurrence-based or claims-made);

c. Name and address of insurer or issuer;

d. The inception and expiration dates;

e. Notice provisions and requirements;

f. Names and addresses of all persons insured thereunder, including any assignments of rights or settlement agreements;

g. Any pollution exclusions and any modifications, waivers, or carveouts relating thereto, including any correspondence regarding pollution coverage disputes, including but not limited to PFAS contamination or environmental claims, disputes, or denials;

h.  Any correspondence regarding

i.  Personal injury limits, and whether per-occurrence or aggregate;

j.  Property damage limits, and whether per-occurrence or aggregate;

k.  Medical payment limits, and whether per-occurrence or aggregate;

l.  Name and address of person who has custody and possession thereof;

m. Where and when each policy and agreement can be inspected and copied;

n.  Whether and where any policy limits were exhausted through prior claims, settlements, or judgements; and

o.  Whether any reservation of rights has been asserted by the carrier and, if so, attach a copy of such reservation.

## CERTIFICATION

Pursuant to the provisions of <u>R.</u> 4:5-1, the undersigned attorney certifies that this matter is not the subject of any other action pending in any court or arbitration proceeding. Additional actions or arbitration proceedings for other injured individuals may be contemplated. The DuPont and Chemours Defendants are and have been Defendants in multiple litigations in New Jersey and elsewhere both in State and federal courts relating to the release of PFAS into the environment.

The undersigned further certifies that Confidential personal identifiers have been redacted from documents now submitted to the Court and will be redacted form all documents submitted in the future in accordance with R. 1:38-7(b).

I further certify that the foregoing statements are true and I am aware that if any statements made by me are willfully false, I am subject to punishment.

DATED:  May 6, 2026                          PHILLIPS & PAOLICELLI, LLP

                                             /s/ *Daniel* J. Woodard
                                             Daniel J. Woodard, Esq.
                                             Attorney for Plaintiffs

# EXHIBIT 1



**Heat Map of Private Potable Well Contamination - PFOS Concentrations**

Site Information:
Lambertville Landfill (Former) [PI #: 1095717]
Latitude: +40.368853 Longitude: -74.936154
Lambertville, Hunterdon County NJ

**Map 5**





**Heat Map of Private Potable Well Contamination - PFOA Concentrations**

Site Information:
Lambertville Landfill (Former) [PI #: 1095717]
Latitude: +40.368853 Longitude: -74.936154
Lambertville, Hunterdon County NJ

Map 6





**Legend**

PFNA Concentration (ppt)

110

1.3

Site Boundary

0   0.07   0.15   0.3
Miles

Former Landfill Area



**Heat Map of Private Potable Well Contamination - PFNA Concentrations**

Site Information:
Lambertville Landfill (Former) [PI #: 1095717]
Latitude: +40.368853 Longitude: -74.936154
Lambertville, Hunterdon County NJ

Map 7



**Heat Map of Private Potable Well Contamination - PFHxS Concentrations**

Site Information:
Lambertville Landfill (Former) [PI #: 1095717]
Latitude: +40.368853 Longitude: -74.936154
Lambertville, Hunterdon County NJ

Map 8



**Legend**

PFBS Concentration (ppt)

55

1.9

Site Boundary

Former Landfill Area

0    0.07    0.15        0.3
                      Miles



**Heat Map of Private Potable Well Contamination - PFBS Concentrations**

Site Information:
Lambertville Landfill (Former) [PI #: 1095717]
Latitude: +40.368853 Longitude: -74.936154
Lambertville, Hunterdon County NJ



Map 9

# EXHIBIT 2



## Legend

**PFOS Concentration (ppt)**

140

2.9

Site Location

0    0.07    0.15    0.3 Miles

**Heat Map of Private Potable Well Contamination - PFOS Concentrations**

Site Information:
Taurus Corporation [PI #: G000014660]
40 Washington Street
City of Lambertville, Hunterdon County, NJ 08530



Map 4

## Legend

**PFOA Concentration (ppt)**

44

3.8

Site Location

| 0 | 0.07 | 0.15 | 0.3 |
Miles



**Heat Map of Private Potable Well Contamination - PFOA Concentrations**

Site Information:
Taurus Corporation [PI #: G000014660]
40 Washington Street
City of Lambertville, Hunterdon County, NJ 08530



Map 5





**Heat Map of Private Potable Well Contamination - PFNA Concentrations**

Site Information:
Taurus Corporation [PI #: G000014660]
40 Washington Street
City of Lambertville, Hunterdon County, NJ 08530

Map 6



**Heat Map of Private Potable Well Contamination - PFHxS Concentrations**

Site Information:
Taurus Corporation [PI #: G000014660]
40 Washington Street
City of Lambertville, Hunterdon County, NJ 08530



Map 7

**Legend**

PFHxS Concentration (ppt)

120

1.7

Site Location

| 0 | 0.07 | 0.15 | 0.3 |

Miles



**Legend**

PFBS Concentration (ppt)

55

1.9

Site Location

0   0.07   0.15   0.3
Miles



**Heat Map of Private Potable Well Contamination - PFBS Concentrations**

Site Information:
Taurus Corporation [PI #: G000014660]
40 Washington Street
City of Lambertville, Hunterdon County, NJ 08530

Map 8

# Civil Case Information Statement

## Case Details: HUNTERDON | Civil Part Docket# L-000214-26

**Case Type:** TOXIC TORT

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: Karen Atwood?** NO

**Are sexual abuse claims alleged by: Harry Heller?** NO

**Are sexual abuse claims alleged by: Wyatt Ellis?** NO

**Are sexual abuse claims alleged by: Shaun Ellis?** NO

**Are sexual abuse claims alleged by: Suzanne Davis?** NO

**Are sexual abuse claims alleged by: William Pidgeon?** NO

**Are sexual abuse claims alleged by: Mary Pidgeon?** NO

**Are sexual abuse claims alleged by: Jennifer Sandoz?** NO

**Are sexual abuse claims alleged by: Christoph Pidgeon?** NO

**Are sexual abuse claims alleged by: Jeanette Pidgeon?** NO

**Are sexual abuse claims alleged by: Renee McCormick?** NO

**Are sexual abuse claims alleged by: Robert McCormick Jr.?** NO

**Are sexual abuse claims alleged by: John Ott III?** NO

**Are sexual abuse claims alleged by: Carol Ott?** NO

**Case Caption:** ATWOOD KAREN  VS E.I. DU PONT DE NEMO URS & COM

**Case Initiation Date:** 05/06/2026

**Attorney Name:** DANIEL J WOODARD

**Firm Name:** PHILLIPS & PAOLICELLI, LLP

**Address:** QUAKERBRIDGE EXECUTIVE 101 GROVERS MILL RD

LAWRENCEVILLE NJ 08648

**Phone:** 6097895600

**Name of Party:** PLAINTIFF : Karen Atwood

**Name of Defendant's Primary Insurance Company**

(if known): Unknown

**Are sexual abuse claims alleged by: Sylvia Barrantes? NO**

**Are sexual abuse claims alleged by: Brad Staudle? NO**

**Are sexual abuse claims alleged by: William Robinson? NO**

**Are sexual abuse claims alleged by: William Robinson? NO**

**Are sexual abuse claims alleged by: Tyler Ramsin? NO**

**Are sexual abuse claims alleged by: Aik J Tan? NO**

**Are sexual abuse claims alleged by: Carol Ramsin? NO**

**Are sexual abuse claims alleged by: Thomas Ramsin? NO**

**Are sexual abuse claims alleged by: Jessica Ramsin? NO**

**Are sexual abuse claims alleged by: Kathleen Brown? NO**

**Are sexual abuse claims alleged by: Eugene Kearns? NO**

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
       **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
       **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO
**Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

05/06/2026                                                            /s/ DANIEL J WOODARD
Dated                                                                            Signed

HUNTERDON COUNTY JUSTICE CENTER
CIVIL DIVISION
65 PARK AVE
FLEMINGTON        NJ 08822

                                    TRACK ASSIGNMENT NOTICE

COURT TELEPHONE NO. (908) 824-9750
COURT HOURS  8:30 AM - 4:30 PM


                    DATE:   MAY 06, 2026
                    RE:     ATWOOD KAREN  VS E.I. DU PONT DE NEMO URS & COM
                    DOCKET: HNT L -000214 26


     THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 3.


     DISCOVERY IS   450 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.


     THE PRETRIAL JUDGE ASSIGNED IS:  HON PATRICK D. HELLER


      IF YOU HAVE ANY QUESTIONS, CONTACT TEAM     001
AT:  (908) 824-9750 EXT 13771.


     IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
     PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                    ATTENTION:

                              ATT: DANIEL J. WOODARD
                              PHILLIPS & PAOLICELLI, LLP
                              QUAKERBRIDGE EXECUTIVE
                              101 GROVERS MILL RD
                              LAWRENCEVILLE    NJ 08648


ECOURTS

**Phillips & Paolicelli, LLP**
101 Grover's Mill Road, Suite 200
Lawrenceville, New Jersey 08534
Phone: 212-388-5100; Fax 212-388-5200
Attorneys for Plaintiffs
By:  Steven J. Phillips, Esq. (NJ Bar No. 007601984)
       SPhillips@p2law.com

| | |
|---|---|
| KAREN ATWOOD, HARRY HELLER, WYATT ELLIS, SHAUN ELLIS, SUZANNE DAVIS, WILLIAM PIDGEON, MARY PIDGEON, JENNIFER SANDOZ, CHRISTOPHER PIDGEON, JEANETTE PIDGEON, RENEE MCCORMICK, ROBERT MCCORMICK, JOHN OTT III, CAROL OTT, SYLVIA BARRANTES, BRAD STAUDLE, WILLIAM ROBINSON INDIVIDUALLY & AS THE PERSONAL REPRESENTATIVE OF MARGARET ROBINSON, TYLER RAMSIN, AIK JUK TAN, CAROL RAMSIN, THOMAS RAMSIN, JESSICA RAMSIN, KATHLEEN BROWN, and EUGENE KEARNS,<br><br>Plaintiffs,<br><br>vs.<br><br>E.I. DU PONT DE NEMOURS & COMPANY, DUPONT SPECIALTY PRODUCTS, USA, LLC, CORTEVA, INC., THE CHEMOURS COMPANY, THE CHEMOURS COMPANY FC, LLC, THE CITY OF LAMBERTVILLE, TOWNSHIP OF WEST AMWELL, TAURUS CORPORATION, TAURUS CORPORATION LIQUIDATION TRUST, ACADEMY HILL, INC., ROBLYN DEVELOPMENT CORPORATION, JOHN CHAYKO, P.E., CITY OF LAMBERTVILLE ENGINEER, SUBURBAN CONSULTING ENGINEERS, MERRICK WILSON, RIVER VALLEY HEIGHTS CORPORATION, JOHN DOE ENTITIES #1-10.<br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION - HUNTERDON COUNTY<br><br>DOCKET NO.: HNT-L-000214-26<br><br>**CIVIL ACTION**<br><br><br>**NOTICE OF APPEARANCE OF STEVEN J. PHILLIPS, ESQ**<br><br><br>Document Filed Electronically |

{00095301}

PLEASE TAKE NOTICE that Steven J. Phillips of Phillips & Paolicelli, LLP will be appearing as counsel for Plaintiffs in the above-captioned action and requests service of papers and notices of all proceedings in this case. Please direct all electronic filings in this action to the email set forth below.

Dated: May 15, 2026

Respectfully submitted,

**Phillips & Paolicelli, LLP**
Attorneys for Plaintiffs

s/ **Steven J. Phillips, Esq**
  Steven J. Phillips, Esq.
sphillips@p2law.com

{00095301}

**Phillips & Paolicelli, LLP**
101 Grover's Mill Road, Suite 200
Lawrenceville, New Jersey 08534
Phone: 212-388-5100; Fax 212-388-5200
Attorneys for Plaintiffs
By:  Victoria E. Phillips, Esq. (NJ Bar No.020732004)
        vphillips@p2law.com

| | |
|---|---|
| KAREN ATWOOD, HARRY HELLER, WYATT ELLIS, SHAUN ELLIS, SUZANNE DAVIS, WILLIAM PIDGEON, MARY PIDGEON, JENNIFER SANDOZ, CHRISTOPHER PIDGEON, JEANETTE PIDGEON, RENEE MCCORMICK, ROBERT MCCORMICK, JOHN OTT III, CAROL OTT, SYLVIA BARRANTES, BRAD STAUDLE, WILLIAM ROBINSON INDIVIDUALLY & AS THE PERSONAL REPRESENTATIVE OF MARGARET ROBINSON, TYLER RAMSIN, AIK JUK TAN, CAROL RAMSIN, THOMAS RAMSIN, JESSICA RAMSIN, KATHLEEN BROWN, and EUGENE KEARNS,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>E.I. DU PONT DE NEMOURS & COMPANY, DUPONT SPECIALTY PRODUCTS, USA, LLC, CORTEVA, INC., THE CHEMOURS COMPANY, THE CHEMOURS COMPANY FC, LLC, THE CITY OF LAMBERTVILLE, TOWNSHIP OF WEST AMWELL, TAURUS CORPORATION, TAURUS CORPORATION LIQUIDATION TRUST, ACADEMY HILL, INC., ROBLYN DEVELOPMENT CORPORATION, JOHN CHAYKO, P.E., CITY OF LAMBERTVILLE ENGINEER, SUBURBAN CONSULTING ENGINEERS, MERRICK WILSON, RIVER VALLEY HEIGHTS CORPORATION, JOHN DOE ENTITIES #1-10.<br>                    Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION - HUNTERDON COUNTY<br><br><br>     DOCKET NO.: HNT-L-000214-26<br><br>     **CIVIL ACTION**<br><br><br><br><br>     **NOTICE OF APPEARANCE OF VICTORIA E. PHILLIPS, ESQ.**<br><br><br><br>     Document Filed Electronically |

{00095300}

PLEASE TAKE NOTICE that Victoria E. Phillips of Phillips & Paolicelli, LLP will be appearing as counsel for Plaintiffs in the above-captioned action and requests service of papers and notices of all proceedings in this case. Please direct all electronic filings in this action to the email set forth below.

Dated: May 15, 2026

Respectfully submitted,
**Phillips & Paolicelli, LLP**
Attorneys for Plaintiffs

s/ **Victoria E. Phillips, Esq.**
   Victoria E. Phillips, Esq.
vphillips@p2law.com

{00095300}

**SUPERIOR COURT OF NEW JERSEY LAW DIVISION: HUNTERDON COUNTY**

KAREN ATWOOD, et al
Plaintiff(s),

vs.

E.I. DU PONT DE NEMOURS & COMPANY, ET AL
Defendant(s).

ATTORNEY: PHILLIPS & PAOLICELLI, LLP

DOCKET NO.: HNT-L-000214-26

DATE OF FILING: 05/06/2026

## AFFIDAVIT OF SERVICE

STATE OF Delaware: COUNTY OF NEW CASTLE   ss:

I, Adam Golden, being duly sworn deposes and says deponent is not a party to this action and is over the age of eighteen years and resides in the state of Delaware.

That on 5/12/2026 at 1:47 PM at Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801, Deponent served the **Civil Action Summons, Complaint, Jury Demand, and Designation of Trial Counsel, Civil Case Information Statement** upon **E.I. Du Pont de Nemours & Company,** defendant/respondent/recipient herein.

Said service was effected in the following manner;

By delivering to and leaving a true copy to **Robin Hutt-Banks** personally, a person who stated to be an authorized agent to receive process service for **E.I. Du Pont de Nemours & Company.** Deponent knew the individual accepting service to be an/the **Registered Agent** thereof.

Deponent describes the individual served to the best of deponent's ability at the time and circumstances of service as follows: Sex: **Female** Skin: **Black** Hair: **Brown** Age (Approx): **60** Height(Approx): **5'6"** Weight(Approx): **190-200 lbs** Glasses: **No** Other:

I certify that the foregoing statements made by me are true, correct and my free act and deed. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
Adam Golden

Sworn to before me this

May____12____2026

Executive Attorney Service Inc. 100 Crossways Park Dr W, Ste 402, Woodbury, NY 11797 5162261073 Lic# 1422060
Case No: 1751839

# SUMMONS

Attorney(s)  Daniel Woodard, Esq., Steven Phillips, Esq.

Office Address   101 Grovers Mill Rd., Suite 200

Town, State, Zip Code  Lawrenceville, New Jersey 08648


Telephone Number   (609) 789-5600

Attorney(s) for Plaintiff  Karen Atwood, Harry Heller, Wyatt

Ellis, Shaun Ellis, Suzanne Davis,

William Pidgeon, Mary Pidgeon, et al

       Plaintiff(s)

      vs.

E.I. Du Pont de Nemours & Co., Dupont

Specialty Products, USA, LLC, et al

       Defendant(s)

## Superior Court of New Jersey

Hunterdon    County

Law    Division

Docket No: HNT-L-000214-26

## CIVIL ACTION SUMMONS

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov.


              Clerk of the Superior Court


DATED:  05/11/2026

Name of Defendant to Be Served:  E.I. Du Pont de Nemours & Company

Address of Defendant to Be Served:  Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801


Revised 11/17/2014, CN 10792-English (Appendix XII-A)

**SUPERIOR COURT OF NEW JERSEY LAW DIVISION: HUNTERDON COUNTY**

| | |
|---|---|
| KAREN ATWOOD, et al<br>Plaintiff(s),<br><br>vs.<br><br>E.I. DU PONT DE NEMOURS & COMPANY, ET AL<br>Defendant(s). | ATTORNEY: PHILLIPS & PAOLICELLI, LLP<br><br>DOCKET NO.: HNT-L-000214-26<br><br>DATE OF FILING: 05/06/2026 |

## AFFIDAVIT OF SERVICE

STATE OF Delaware: COUNTY OF NEW CASTLE   ss:

I, Adam Golden, being duly sworn deposes and says deponent is not a party to this action and is over the age of eighteen years and resides in the state of Delaware.

That on 5/12/2026 at 1:47 PM at Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801, Deponent served the **Civil Action Summons, Complaint, Jury Demand, and Designation of Trial Counsel, Civil Case Information Statement** upon **The Chemours Company**, defendant/respondent/recipient herein.

Said service was effected in the following manner;

By delivering to and leaving a true copy to **Robin Hutt-Banks** personally, a person who stated to be an authorized agent to receive process service for **The Chemours Company**. Deponent knew the individual accepting service to be an/the **Registered Agent** thereof.

Deponent describes the individual served to the best of deponent's ability at the time and circumstances of service as follows: Sex: **Female** Skin: **Black** Hair: **Brown** Age (Approx): **60** Height(Approx): **5'6"** Weight(Approx): **190-200 lbs** Glasses: **No** Other:

I certify that the foregoing statements made by me are true, correct and my free act and deed. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
Adam Golden

Sworn to before me this

May___/2___2026

*(notary seal: GEORGE H. COVERT II, COMMISSION EXPIRES FEB 13 2028, NOTARY PUBLIC, STATE OF DELAWARE)*

Executive Attorney Service, Inc. 100 Crossways Park Dr W, Ste 402, Woodbury, NY 11797 5162261073 Lic# 1422060
Case No: 1751838

**SUPERIOR COURT OF NEW JERSEY LAW DIVISION: HUNTERDON COUNTY**

KAREN ATWOOD, et al
Plaintiff(s),

vs.

E.I. DU PONT DE NEMOURS & COMPANY, ET AL
Defendant(s).

ATTORNEY: PHILLIPS & PAOLICELLI, LLP

DOCKET NO.: HNT-L-000214-26

DATE OF FILING: 05/06/2026

## AFFIDAVIT OF SERVICE

STATE OF Delaware: COUNTY OF NEW CASTLE    ss:

I, Adam Golden, being duly sworn deposes and says deponent is not a party to this action and is over the age of eighteen years and resides in the state of Delaware.

That on 5/12/2026 at 1:47 PM at Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801, Deponent served the Civil Action Summons, Complaint, Jury Demand, and Designation of Trial Counsel, Civil Case Information Statement upon The Chemours Company FC, LLC, defendant/respondent/recipient herein.

Said service was effected in the following manner;

By delivering to and leaving a true copy to Robin Hutt-Banks personally, a person who stated to be an authorized agent to receive process service for The Chemours Company FC, LLC. Deponent knew the individual accepting service to be an/the Registered Agent thereof.

Deponent describes the individual served to the best of deponent's ability at the time and circumstances of service as follows: Sex: Female  Skin: Black  Hair: Brown  Age (Approx): 60 Height(Approx): 5'6"  Weight(Approx): 190-200 lbs  Glasses: No Other:

I certify that the foregoing statements made by me are true, correct and my free act and deed. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Adam Golden

Sworn to before me this

May____12_____2026

*(notary seal: GEORGE H. COVERT, COMMISSION EXPIRES FEB 13 2028, NOTARY PUBLIC STATE OF DELAWARE)*

Executive Attorney Service, Inc. 1000 Crossways Park Dr W, Ste 402, Woodbury, NY 11797 5162261073 Lic# 1422060
Case No: 1751837

**SUPERIOR COURT OF NEW JERSEY LAW DIVISION: HUNTERDON COUNTY**

KAREN ATWOOD, et al
Plaintiff(s),

vs.

E.I. DU PONT DE NEMOURS & COMPANY, ET AL
Defendant(s).

ATTORNEY: PHILLIPS & PAOLICELLI, LLP

DOCKET NO.: HNT-L-000214-26

DATE OF FILING: 05/06/2026

## AFFIDAVIT OF SERVICE

STATE OF Delaware: COUNTY OF NEW CASTLE    ss:

I, Adam Golden, being duly sworn deposes and says deponent is not a party to this action and is over the age of eighteen years and resides in the state of Delaware.

That on 5/12/2026 at 1:47 PM at **Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801,** Deponent served the **Civil Action Summons, Complaint, Jury Demand, and Designation of Trial Counsel, Civil Case Information Statement** upon **Corteva, Inc.,** defendant/respondent/recipient herein.

Said service was effected in the following manner;

By delivering to and leaving a true copy to **Robin Hutt-Banks** personally, a person who stated to be an authorized agent to receive process service for **Corteva, Inc..** Deponent knew the individual accepting service to be an/the **Registered Agent** thereof.

Deponent describes the individual served to the best of deponent's ability at the time and circumstances of service as follows: Sex: **Female**  Skin: **Black**  Hair: **Brown**  Age (Approx): **60**  Height(Approx): **5'6"**  Weight(Approx): **190-200 lbs**  Glasses: **No** Other:

I certify that the foregoing statements made by me are true, correct and my free act and deed. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
**Adam Golden**

Sworn to before me this

May____12____2026

Executive Attorney Service, Inc. 100 Crossways Park Dr W, Ste 402, Woodbury, NY 11797 5162261073 Lic# 1422060
Case No: 1751841

**SUPERIOR COURT OF NEW JERSEY LAW DIVISION: HUNTERDON COUNTY**

KAREN ATWOOD, et al
Plaintiff(s),

vs.

E.I. DU PONT DE NEMOURS & COMPANY, ET AL
Defendant(s).

ATTORNEY: PHILLIPS & PAOLICELLI, LLP

DOCKET NO.: HNT-L-000214-26

DATE OF FILING: 05/06/2026

## AFFIDAVIT OF SERVICE

STATE OF Delaware: COUNTY OF NEW CASTLE    ss:

I, Adam Golden, being duly sworn deposes and says deponent is not a party to this action and is over the age of eighteen years and resides in the state of Delaware.

That on 5/12/2026 at 1:47 PM at Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801, Deponent served the Civil Action Summons, Complaint, Jury Demand, and Designation of Trial Counsel, Civil Case Information Statement upon Dupont Specialty Products, USA, LLC, defendant/respondent/recipient herein.

Said service was effected in the following manner;

By delivering to and leaving a true copy to Robin Hutt-Banks personally, a person who stated to be an authorized agent to receive process service for Dupont Specialty Products, USA, LLC. Deponent knew the individual accepting service to be an/the Registered Agent thereof.

Deponent describes the individual served to the best of deponent's ability at the time and circumstances of service as follows: Sex: Female  Skin: Black  Hair: Brown  Age (Approx): 60  Height(Approx): 5'6"  Weight(Approx): 190-200 lbs  Glasses: No  Other:

I certify that the foregoing statements made by me are true, correct and my free act and deed. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
Adam Golden

Sworn to before me this

May____/2____ 2026

_____

Executive Attorney Service: 100 Crossways Park Dr W, Ste 402, Woodbury, NY 11797 5162261073 Lic# 1422060

Case No: 1751840

**SUPERIOR COURT OF NEW JERSEY LAW DIVISION: HUNTERDON COUNTY**

---

KAREN ATWOOD, et al
Plaintiff(s),

vs.

E.I. DU PONT DE NEMOURS & COMPANY, ET AL
Defendant(s).

ATTORNEY: PHILLIPS & PAOLICELLI, LLP

DOCKET NO.: HNT-L-000214-26

DATE OF FILING: 05/06/2026

---

**AFFIDAVIT OF SERVICE**

STATE OF New Jersey: COUNTY OF CAMDEN    ss:

I, John Baratta, being duly sworn deposes and says deponent is not a party to this action and is over the age of eighteen years and resides in the state of New Jersey.

That on **05/20/2026** at **2:08 PM** at **18 York Street, Lambertville, NJ 08530,**
Deponent served the **Civil Action Summons, Complaint, Jury Demand, and Designation of Trial Counsel, Civil Case Information Statement** upon **The City of Lambertville, Township of West Amwell**, defendant/respondent/recipient herein.

Said service was effected in the following manner;

By delivering to and leaving a true copy to **Cynthia Ege** personally, a person who stated to be an authorized agent to receive process service for **The City of Lambertville, Township of West Amwell**. Deponent knew said city agency so served to be the city agency described in said **Civil Action Summons, Complaint, Jury Demand, and Designation of Trial Counsel, Civil Case Information Statement** as said defendant/respondent/recipient. Deponent knew the individual accepting service to be an/the **City Clerk** thereof.

Deponent describes the individual served to the best of deponent's ability at the time and circumstances of service as follows: Sex: **Female** Skin: **White** Hair: **Gray** Age (Approx): **60** Height(Approx): **5'5"** Weight(Approx): **130-140 lbs** Glasses: **Yes** Other:

I certify that the foregoing statements made by me are true, correct and my free act and deed. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

John Baratta

Sworn to before me this

May ___ 2026

CHRISTOPHER J. MULLEN
COMMISSION # 2389225
NOTARY PUBLIC, STATE OF NEW JERSEY
COMMISSION EXPIRES SEPTEMBER 03, 2029

Executive Attorney Service, Inc. 100 Crossways Park Dr W, Ste 402, Woodbury, NY 11797 5162261073 Lic# 1422060
Case No: 1752949

**SUPERIOR COURT OF NEW JERSEY LAW DIVISION: HUNTERDON COUNTY**

KAREN ATWOOD, et al
Plaintiff(s),

vs.

E.I. DU PONT DE NEMOURS & COMPANY, ET AL
Defendant(s).

ATTORNEY: PHILLIPS & PAOLICELLI, LLP

DOCKET NO.: HNT-L-000214-26

DATE OF FILING: 05/06/2026

## AFFIDAVIT OF SERVICE

STATE OF New York: COUNTY OF New York    ss:

I, John L Hudak, being duly sworn deposes and says deponent is not a party to this action and is over the age of eighteen years and resides in the state of New York.

That on **5/28/2026** at **2:26 PM** at **96 U.S. Highway 206, Ste 101, Flanders, NJ 07836,**
Deponent served the **Civil Action Summons, Complaint, Jury Demand, and Designation of Trial Counsel, Civil Case Information Statement** upon **Suburban Consulting Engineers,** defendant/respondent/recipient herein.

Said service was effected in the following manner;

By delivering to and leaving a true copy to **ASHLEY EDSON** personally, a person who stated to be an authorized agent to receive process service for **Suburban Consulting Engineers.** Deponent knew said business so served to be the business described in said **Civil Action Summons, Complaint, Jury Demand, and Designation of Trial Counsel, Civil Case Information Statement** as said defendant/respondent/recipient. Deponent knew the individual accepting service to be an/the **Human Resources** thereof.

Deponent describes the individual served to the best of deponent's ability at the time and circumstances of service as follows: Sex: **Female** Skin: **White** Hair: **Brown** Age (Approx): **28** Height(Approx): **5'** Weight(Approx): **120-130 lbs** Glasses: **No** Other:

I certify that the foregoing statements made by me are true, correct and my free act and deed. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

John L Hudak

Sworn to before me this

May_____2026

ALEXANDER JAMES
NOTARY PUBLIC, STATE OF NEW YORK
REGISTRATION NO. 01JA6029931
QUALIFIED IN NASSAU COUNTY
COMMISSION EXPIRES AUGUST 30, 2029

Executive Attorney Service, Inc. 100 Crossways Park Dr W, Ste 402, Woodbury, NY 11797 5162261073 Lic# 1422060
Case No: 1752951

SUPERIOR COURT OF NEW JERSEY LAW DIVISION: HUNTERDON COUNTY

| | |
|---|---|
| KAREN ATWOOD, et al<br>Plaintiff(s), | ATTORNEY: PHILLIPS & PAOLICELLI, LLP |
| vs. | DOCKET NO.: HNT-L-000214-26 |
| E.I. DU PONT DE NEMOURS & COMPANY, ET AL<br>Defendant(s). | DATE OF FILING: 05/06/2026 |

## AFFIDAVIT OF SERVICE

STATE OF New York: COUNTY OF New York    ss:

I, John L Hudak, being duly sworn deposes and says deponent is not a party to this action and is over the age of eighteen years and resides in the state of New York.

That on **5/28/2026** at **2:26 PM** at **96 U.S. Highway 206, Ste 101, Flanders, NJ 07836,**
Deponent served the **Civil Action Summons, Complaint, Jury Demand, and Designation of Trial Counsel, Civil Case Information Statement** upon **John Chayko, P.E.,** defendant/respondent/recipient herein.

Said service was effected in the following manner;

By delivering thereat a true copy to **ASHLEY EDSON, Human Resources,** a person of suitable age and discretion. That person was also asked by deponent whether said premises was the defendant/respondent/recipient actual place of business and their reply was affirmative.

Deponent describes the individual served to the best of deponent's ability at the time and circumstances of service as follows: Sex: **Female** Skin: **White** Hair: **Brown** Age (Approx): **28** Height(Approx): **5'** Weight(Approx): **120-130 lbs** Glasses: **No** Other:

I certify that the foregoing statements made by me are true, correct and my free act and deed. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Sworn to before me this

May _____ 2026

John L Hudak

ALEXANDER JAMES
NOTARY PUBLIC, STATE OF NEW YORK
REGISTRATION NO. 01JA6029931
QUALIFIED IN NASSAU COUNTY
COMMISSION EXPIRES AUGUST 30, 2029

Executive Attorney Service, Inc. 100 Crossways Park Dr W, Ste 402, Woodbury, NY 11797 5162261073 Lic# 1422060
Case No: 1752950